## Robertson v. Mechanics Trust & Savings Bank with the will annexed of G. W. Robertson, Deceased.

(Decided May 16, 1919.)

### Appeal from McCracken Circuit Court.

1. Partnership—Compensation—Evidence.—To entitle one partner to a salary or compensation the proof of a contract to that effect must be clear and convincing; it is not sufficient that the claimant had control of the business or performed the major portion of the work.

2. Pleading—Intervening Petition.—The allegations of an intervening petition not being denied they will, upon trial, be taken as confessed.

JOHN K. HENDRICK for appellant.

MOCQUOT & CAMPBELL and WHEELER & HUGHES for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

G. W. Robertson and his son, G. H. Robertson, as copartners, were engaged in the business of manufacturing

and selling ice in the city of Paducah, under the firm name of the "G. W. Robertson Ice Company." The copartnership was formed in 1910; the elder Robertson died testate in January, 1915. His estate was left to his wife for life and at her death to be equally divided among his six children.

The will directed that G. H. Robertson (hereinafter for brevity referred to as George) should pay A. M. Robertson, his mother, fifty dollars per month, as rental for her part in the ice company during her life, George to have the remaining earnings for his services.

Mrs. A. M. Robertson, named as executrix of the foregoing will, died December 20, 1915, and on January 7, 1916, the Mechanics Trust & Savings Bank qualified as the administrator with the will annexed of G. W. Robertson.

Thereafter said administrator brought this suit against George seeking a settlement of the affairs of the copartnership and asking that a receiver be appointed to take charge of the ice company. George filed an answer in which he alleged that he had entire control of the ice business, and it was the understanding he was to be paid a reasonable salary for his services, though no agreement was ever reached as to the amount of salary he should receive; that no salary was ever paid him, but his services for the six years were worth $15,000.00, and during the time he (George) was connected with said company it made and there was deposited to its credit in the bank the sum of $11,155.37, which was divisible one-half to the father's estate, balance to George. He alleged the payment of fifty dollars per month to his mother during her lifetime, as provided in the will, and that he was entitled to the balance of the earnings from the ice business, and his father's estate had no interest in the proceeds of the ice company for the year 1915. The answer further alleged that pursuant to a request made by his mother, in her will, his three sisters, on January 3, 1916, conveyed to him by a written instrument all of their interest in the ice company, including the teams, wagons and all other appliances. He denied that the heirs of his father, other than Charles L. Robertson, a brother, had any interest in the ice plant. Another brother, J. D. Robertson, died before the death of the father, thus leaving five children; hence George claimed to be the owner of nine-tenths of the ice business, one-

half as a copartner, one-tenth being his share as an heir and three-tenths conveyed to him by his sisters.

In addition to his claim of salary, one-half or $7,500.00, which he claimed was due him from the estate and one-half of the $11,155.37 deposit in bank, or $5,577.68, a total of $13,077.68, he sought judgment in the sum of $2,402.75 on a note dated December 2, 1914, due him from his father for money placed in the box of his father by him (George) for safe-keeping.

Mrs. Ida Aycock, one of the sisters, filed an intervening petition in this suit which was made a cross-petition against George, and taken as a reply to his answer. After denying the material allegations in the answer, intervener alleged that she signed the paper hereinabove referred to, believing at the time that the mules, wagons and harness constituted all the property to which George made claim, and had she known her brother George was claiming any part of the money held in her mother's name she would not have signed said paper; that the paper was signed pursuant to the request made by her mother, as evidenced by the following language in her will: "I also express the wish and desire that my three daughters, Ida Aycock, Lou McNish and Mit Dodds, give to my son George H. Robertson, all of the ice wagons, mules and harness now belonging to and being used by the ice company in connection with its plant in Paducah, Kentucky."

She alleged that the $11,155.37 deposited in bank at the time said paper was signed, had been transferred to her mother and was held and claimed by the latter as her property, and intervener was not advised that George claimed an interest in any part of it, and her signature to said paper she says was obtained by fraud and misrepresentation of the facts.

George having purchased the interest of C. L. Robertson an order was entered taking for confessed the allegations of his answer, except as to Ida Aycock, and the funds in controversy turned over to him, with the exception of the one-tenth claimed by his sister Ida. The other two sisters filed an intervening petition approving said order and asking that their one-tenth interest be paid to George in accordance with the writing of January 3, 1916.

Upon final submission the court denied George's claim for salary, directed the payment of $2,000.00 to him

from the sum of $11,155.37, this to cancel the note signed by the father; the residue of $9,155.37 the court adjudged belonged one-half to the estate of G. W. Robertson and one-half to George. Ida Aycock having died, her interest of one-tenth was ordered paid her surviving husband, Rupert Aycock, as per the terms of her will.

Two questions are thus presented for decision: (1) is the appellant, G. W. Robertson, entitled to any salary for his management of the ice company, and (2) is the appellant entitled to the one-tenth interest of his sister, Mrs. Aycock, under the agreement signed by her?

Appellant's claim for salary cannot be allowed. To entitle one partner to a salary or compensation the proof of a contract to that effect must be clear and convincing. That the one so claiming may have had absolute management and control of the business, or performed all or a major portion of the clerical or other work of the partnership is not sufficient. The proof here does not show an express agreement as to salary, nor do the facts and circumstances raise the implication that any understanding to this effect existed between father and son. See Whitney v. Whitney, 27 R. 1197, 88 S. W. 311; Caldwell v. Lang, 31 R. 237, 101 S. W. 972; Blair v. Fraley, 172 Ky. 570. Appellant testifies that both he and his father lived out of the proceeds of the business. If there had been an intention to fix and pay a salary to appellant it seems this would have been done during the father's lifetime, and while the firm was accumulating a surplus over and above the operating and living expenses.

As to Mrs. Aycock's claim. On June 2, 1915, a certificate of deposit covering $9,355.37 of the ice company's fund was issued to Mrs. A. M. Robertson at the instance of George; this amount included accrued interest on the two certificates of deposit converted into this one. His reason for making this transfer was due to the fact that he was going hunting and did not know what might happen, and placed it to his mother's credit for safe-keeping. The ice company's books disappeared while appellant was on the hunt. While the answer alleged that the amount deposited to the credit of the company was $11,155.37, it appears that all the parties, including the court and appellant, treat this as two separate items, viz.: $2,000.00 belonging to appellant and $9,355.37 to the firm.

Counsel complains that the lower court had no conception of the real proposition involved when it decreed one-half or $4,577.68 as the share due the estate. Conceding the $2,000.00 belonged to appellant, and was properly deducted from the gross deposit, counsel argues that from the one-half due the estate this $2,000.00 should again be deducted, leaving a net amount to the estate of something over $2,500.00, and to appellant something over $6,500.00, to which if we add the $2,000.00 first deducted would give appellant over $8,500.00, out of the $11,155.37. The fallacy of this method of calculation is apparent from the result shown. It would seem the court clearly understood the situation. We cannot give the exact figures used in those calculations as the gross amount is variously stated as $11,000.00, $11,155.37 and $11,557.37.

If the entire sum of $11,155.37 belonged to the ice company it would be manifestly improper to first deduct the $2,000.00 as an indebtedness of the father, and give appellant one-half of the remainder, for then he would be paying himself, in part, from his own funds, but the partnership fund is treated, in the proof and briefs, as $9,155.37, exclusive of the $2,000.00 item.

As alleged in the answer we think appellant was entitled to the company's earnings during the year 1915, after paying his mother fifty dollars per month, and it would be unjust to allow the estate any further portion of the earnings of said year. However, we have searched in vain to find what part, if any, of this surplus of $9,155.37 was derived from the 1915 business. There being nothing in the record to aid us in the ascertainment of this fact, we are powerless to correct the error, if such it is.

There is no evidence of fraud on the part of appellant in his dealings with Mrs. Aycock; the agreement she signed was prepared in order to carry out the request of the mother. The two other sisters and a brother-in-law testify to the circumstances under which it was signed, and that all understood what it meant. A letter from Mrs. Aycock to one of the sisters is filed and in it we find this statement:

"We had a notice from James Campbell to appear at court next Tuesday that C. L. had brought suit to have the real estate sold and divided; he has also brought suit

about the ice company. Campbell says there was something like 11 thousand dollars that was put into the bank in Mama's name as trustee and C. L. wants his part of that. 16 hundred and some odd dollars—I don't know just the exact amount as I haven't his letter here. Now that is the part Mama asked us to give to George.''

The affirmative allegation of Mrs. Aycock's intervening petition, reference to which has heretofore been made, are not denied. This being true, even though no proof was taken in her behalf, we do not see how the court could have done otherwise than it did, viz: adjudged to her husband, Rupert Aycock, a one-tenth interest in the funds of the ice company.

Perceiving no error in the judgment appealed from same is accordingly affirmed.