## Bemiss, Executor, Etc., and Individually v. Widows' & Orphans' Home of the Christian Church of Kentucky.

(Decided April 29, 1921.)

### Appeal from Shelby Circuit Court.

1. Partnership—Compensation for Services Rendered Firm.—In the absence of some agreement to that effect, either express or implied, and if denied proven by clear and convincing evidence, a partner is not entitled to compensation for his services rendered to the firm, and this is true although his services are largely in excess of those rendered by the other member or members, or if he renders all of the services required in conducting the business of the partnership.

2. Partnership—Implied Contract for Services.—A contract for such services may be implied from the conduct of the parties during the life of the partnership as if the partner claiming compensation during such time takes credit therefor with the knowledge of the other partner or partners without their objection, but such fact and circumstances must be clearly proven before an agreement will be implied therefrom.

3. Partnership—Duty of Partner to Render Services.—It is the duty of each partner in a firm in the absence of an agreement to the contrary to render his proportionate part of services to the firm business and in doing so it will be presumed that they were rendered gratuitously and for his own benefit and in his own behalf as a partner.

4. Partnership—Services—What Not Sufficient to Show Contract.— The fact that the partner resisting the compensation made statements during the continuance of the partnership recognizing the extent and amount of services rendered by his partner and the latter's ability, faithfulness and fairness in conducting the business, and expressing an intention for him to be compensated "some day," is neither sufficient to show a contract nor to recognize one previously entered into, and for a greater reason is this true when the partner making them makes a substantial bequest in his will to his surviving partner who is in no way related to him by blood or marriage.

E. B. BEARD, E. H. DAVIS and JOHN A. FULTON for appellant.

BECKHAM & GILBERT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In 1901 or 1902 the appellant and defendant below, John Bemiss, and Thomas A. McGrath formed an equal partnership and embarked in the saloon business in Shelbyville, Kentucky. They operated that business upon those terms until September, 1904, when the latter died, which fact *ipso facto* terminated and dissolved the partnership. If there was ever any settlement of the estate of the deceased partner, which consisted only of his interest in the partnership, the record does not disclose it. He had no children and left surviving him his widow, Helen McGrath, and we gather from the record that he devised all his property to her subject, however, to the payment of his debts which amounted to $750.00. After his death, by common consent or acquiescence, the business continued in the firm name of Bemiss & McGrath, the first named being the defendant, who thereafter had the exclusive management and control of the business and devoted his entire time and attention as well as his business ability to its management. After the death of McGrath his widow was treated by appellant as a partner with him and as owning the same interest in the business and entitled to the same share of the profits as was her husband before his death; but, whether there was any new contract to this effect, and if so what were its terms, the record fails to disclose. The business was thus managed and conducted after the death of McGrath until March 1, 1913, when it was sold and we assume that the proceeds were divided equally between defendant and Mrs. McGrath, although upon this point the record is also silent. Throughout the period that Mrs. McGrath was treated as a partner defendant attended to the business exclusively, buying supplies and paying for them, as well as paying all of the expenses incident to the conducting of the business, paid the taxes, the insurance, and procured the necessary license, and he periodically divided the accumulations of the business equally between himself and Mrs. McGrath. At no time during that period of between eight and nine years did he, by word or act, intimate or suggest any agreement between himself and his then partner whereby he was to receive any compensation for his services in attending exclusively to the business, nor does the record contain any circumstance or fact from which such a contract could be implied.

On December 9, four years, nine and one-half months
after the business had been sold and the partner-
ship dissolved, Mrs. McGrath died leaving a will in which
she made certain specific bequests, including one to de-
fendant in the sum of $1,000.00, and the remainder of her
estate she bequeathed to appellee and plaintiff below, the
Widows' & Orphans' Home of the Christian Church of
Kentucky, a charitable corporation located in the city of
Louisville. In her will she appointed defendant executor
thereof and requested that he be allowed to qualify and
act without being required to execute bond. Shortly
after the death of Mrs. McGrath defendant probated her
will and qualified as executor of it and proceeded to wind
up the estate. On December 13, 1918, he made in the
county court a final settlement which showed the amount
he received from all sources, for distribution under the
will, of $14,487.19 and it showed credits for debts, costs
and bequests in the amount of $9,223.01, leaving a balance
to be paid plaintiff as residuary legatee the sum of $5,-
264.18. That settlement was an *ex parte* one, and plain-
tiff on the third day of January, 1919, filed this action in
equity in the Shelby circuit court to surcharge the settle-
ment made in the county court by defendant as executor
of the will of Mrs. McGrath, and in the petition three
items of credit were attacked. One of them was a credit
of $3,000.00 claimed by defendant to be due him as one-
half of the sum to which he was entitled as compensation
from the firm for his services in managing and conducting
the partnership business after the death of Thomas A.
McGrath to the time it was sold. Another one was that
the allowance to defendant of 5 per cent. commission on
the entire estate of Mrs. McGrath was exorbitant, and the
third one was an item of $100.00 paid to P. R. Beard,
cashier of the bank with which the firm and Mrs. Mc-
Grath did business, which amount was paid to him for his
services in disposing of some of the notes owned by tes-
tatrix aggregating $7,420.00. It was alleged in the peti-
tion that the item of $3,000.00 was erroneously allowed
because there was no agreement, express or implied, in
any articles of partnership, or between the partners in
any way, that the defendant should be paid compensation
for his services to the firm; and it was also alleged that
the principal part, if not all of it, was barred by the Stat-
ute of Limitations. The grounds for the relief sought by
the petition were contested by appropriate pleadings and

upon final submission the court surcharged the settle-
ment, in so far as it allowed defendant the credit of $3,-
000.00 for his services to the firm, and gave judgment
against him in his fiduciary capacity and individually for
that amount with interest from the date of the settlement,
and dismissed the petition as to all other relief sought
by it.

By this appeal defendant complains of that judgment
and urges a number of grounds for a reversal; but the
conclusion which we have reached renders it unnecessary
to consider but one of them, which is, whether it is lawful,
under the facts disclosed by the record, for plaintiff to
recover any sum as compensation for his services ren-
dered to the firm in the prosecution and management of
the partnership business. If he is entitled under the
law to anything the sum claimed is much below that which
the proof shows to be reasonable. The facts prove a
strong case where equity, if there was any principle of
law to sustain it, would unhesitatingly make the allow-
ance, but the searching efforts of counsel, augmented by
that of our own, to find such a principle of law have been
in vain, and we are forced to the conclusion that the judg-
ment was correct in disallowing this item and in render-
ing judgment in favor of plaintiff for its recovery.

The general rule recognized by all the courts and text
writers, with practically no dissent, is that a partner is
not entitled to compensation for his personal services in
conducting the partnership business beyond his share in
the profits, unless there is a stipulation to that effect, and
that the fact of inequality of services rendered by one
partner as compared with those rendered by others will
not alter this rule, and this is true though the partner
seeking compensation may render all the services in the
conduct of the partnership business. Some of the many
authorities, announcing this universal general rule, are:
20 R. C. L. 877-878; 30 Cyc. 448-450; Williams v. Peder-
son, 47 Wash. 472, 92 Pac. 287, 17 L. R. A. (N. S.) 384,
and note thereto; Rains v. Weiler, (Kan.) 166 Pac. 235,
1917F L. R. A. 571 and note on page 575; Chamberlain v.
Sawyers, 17 Ky. L. R. 716; Whitney v. Whitney, 27 Ky.
L. R. 1197; Caldwell v. Lang, 21 Ky. L. R. 237, 101 S. W.
R. 972; Blair v. Fraley, 172 Ky. 570, and Robertson v.
Mechanics T. & S. Bank, 184 Ky. 287. Numerous other
cases are found in the notes to the Lawyers' Reports

Annotated, referred to, from other courts as well as this one, and the rule may be said to exist without exception. The reason for the rule lies in the fact that each partner in taking care of the partnership property and in managing and conducting the business is taking care of his own interest and is performing his own duties and obligations growing out of the partnership relation, since the partnership is considered an entity of which each partner forms a part. Within this rule, however, it is not imperatively essential that the agreement for compensation should be an express one, since it may be allowed under an implied one, but the facts necessary to raise such an implication should be established by clear and convincing evidence. Recognizing these principles, as applicable to partnerships, we said in the Blair case, *supra*:

"Should the lower court have allowed Fraley any compensation for his services in looking after these lands? The rule in respect to compensation between partners is that, in the absence of clear and convincing evidence of a contract, compensation will not follow merely because one partner renders more service in connection with the firm's business than the other, and while it appears that Fraley did render more service in connection with the land than Blair, we are inclined to think that he should not have any compensation for this service, in the absence of more satisfactory evidence of an agreement that he should be compensated than appears in the record."

And again in the Robertson case, *supra,* it was said:

"Appellant's claim for salary cannot be allowed. To entitle one partner to a salary or compensation the proof of a contract to that effect must be clear and convincing. That the one so claiming may have had absolute management and control of the business, or performed all or a major portion of the clerical or other work of the partnership is not sufficient. The proof here does not show an express agreement as to salary, nor do the facts and circumstances raise the implication that any understanding to this effect existed between father and son."

In the Caldwell case referred to from this court the facts were equally as strong, if not stronger, in favor of the allowance from a moral standpoint as they are in this case. The partnership business in that case was not

shown to have been formed under any express agreement, either oral or written. It was conducted by one member of the firm exclusively for a period of nearly seventeen years with no agreement as to compensation and with nothing appearing to indicate that the managing partner expected compensation or to indicate any intention on the part of the others that he should receive it. After the dissolution, and in a suit to settle the partnership affairs, a claim was made by the managing partner for very moderate compensation which the trial court allowed but which this court on appeal denied, saying:

"Ordinarily a partner is not entitled to charge the partnership for his services. In the absence of an express agreement, or of such facts and circumstances as implied an agreement upon the part of the other partners to pay him for his services, he is not entitled to pay. The rule is elementary and needs no citation of authorities. There is no claim that there was an express agreement between J. M. Lang and his brother W. M. Lang, or between J. M. Lang and his mother and sisters or any of them that he was to be paid a salary for his services. It was never intimated to any of the other parties by J. M. Lang that he was to receive a salary for his services. The manner in which he kept the books, particularly for the first several years after his brother's death, indicates clearly that he did not contemplate originally charging for his services."

Whatever may have been the legal rights of defendant and Mrs. McGrath upon the death of her husband they saw proper to continue the business as a partnership, with the widow associated with defendant as a member of the firm instead of her husband, and the relationship thus assumed (although by acquiescence alone) became fully executed upon a sale of the partnership property in 1913. At no time during that relationship does the record show anything that was said or done, by either party, indicating a contract or agreement whereby defendant should be compensated. On the contrary the conduct of the defendant himself is quite persuasive that he did not contemplate the compensation which he now seeks to recover; for at each settlement period he divided the net proceeds of the business equally between himself and Mrs. McGrath; and he made no charge, or collected any sum, for his services. Neither did he mention the matter, so far as the record discloses, to Mrs. McGrath for

the, nearly, five years she lived after the sale of the business and the dissolution of the partnership. Upon no fact, then, can any agreement for compensation be implied. Hence, we have a case where the claim for compensation instead of being asserted under a contract proven by ''clear and convincing evidence,'' is attempted to be asserted without proof of any express contract or any circumstance from which one may be clearly implied, unless it may be done, as is insisted, by certain evidence introduced, which we will now consider.

Defendant introduced as a witness in his behalf Mr. L. G. Smith, a man of high standing, who testified that in a number of conversations he had with Mrs. McGrath she expressed gratitude and satisfaction with the manner of conducting the business of the firm by the defendant and said, ''He would be paid some day,'' or ''He will be well paid for it, for the work he has done.'' It is insisted that these remarks proved, or were confirmatory of, an agreement to pay defendant compensation for his services; but we are unable to attribute to them that effect. As hereinbefore stated a partner, in the absence of a contract to the contrary, obligates his services to his firm gratuitously, i. e., without expectation of, or the right to, compensation. The situation is very analogous to services rendered by a child in support of its parent and for which no compensation will be allowed without an express contract therefor, since the services rendered by the child will be presumed to be gratuitous and the quantum of evidence necessary to sustain a contract for compensation in such cases is measured by the same rule as is necessary to establish a contract for compensation between partners. Bishop v. Newman, 168 Ky. 238; Norman v. Norman, *idem* 365, and Armstrong v. Shannon, 177 Ky. 547. In the Bishop case referred to it was shown that the parent, from whose estate compensation was demanded by the child, stated on a number of occasions that she wanted her daughter paid for what the latter had done for her, and that ''If I give her (the daughter) all of it (the property) it won't pay her. I know she has stood by me through thick and thin;'' but this court, in denying the claim, said: ''A contract to pay for such services will not be implied from the fact that the services were rendered; nor will proof of the statements by the parent to other persons indicating her gratitude to the

daughter, or statements indicating the purpose of the parent to make compensation, or to the effect that the daughter ought to be paid for her services, or should be paid, or her desire that the daughter should be paid, are not sufficient to prove that a contract for the payment for the services has been made and exists.'' The proven statements of Mrs. McGrath in this case went only to the extent of recognizing the faithfulness of defendant's services, and his fair and upright conduct in the management of the business, and of the treatment accorded to her as his partner, in recognition of which she expressed an intention that he should be compensated ''some day.'' This she attempted to do, according to her measure of sufficiency, when she devised to him $1,000.00. Under the facts and circumstances, the proven remarks by her can in no sense be construed into a contract, or the recognition of a prior existing one.

But it is insisted that under the rule announced by this court in its opinions rendered in the cases of Terrell v. Rowland, 86 Ky. 67; Barber's Admrs. v. Murphy's Admr., 23 Ky. L. R. 286, and Stone v. Mattingly, 18 Ky. L. R. 187, the defendant is entitled to compensation and the judgment disallowing it should be reversed. A reading of those opinions will clearly show there non-applicability and the misconception of counsel in relying on them. In each of them the suit was to settle the partnership affairs, and the question did not arise collaterally, as in this case, or after the expiration of nearly five years from a mutual settlement of the partnership, as is true here. A brief reference to one of them will be sufficient to indicate the difference between them and the one now under consideration. In the Mattingly case there existed a written partnership contract expressly obligating each partner ''to perform services and to render that assistance necessary to the proper conduct of the business.'' One of the partners (Stone) neglected and refused to carry out that obligation and declined to render any assistance or any services in the partnership business; but on the contrary, in the language of the opinion, he ''stood by and saw the entire management of the distilleries conducted by Mattingly with his (Mattingly's) own capital, his labor and skill,'' and, it was held, that under such circumstances it was both unjust and inequitable for the non-performing partner to collect his full share of the profits without any reduction for the exclusive services

rendered by the other partner. As we have seen, the essential differentiating fact between that case and this one, is that here no such partnership contract is shown and, consequently, no such dereliction is shown on the part of Mrs. McGrath as was shown in that case on the part of Stone. The other cases relied on are susceptible of a like interpretation, which shows that none of them can be permitted to affect, much less control, this case. Defendant performed his services faithfully and well and with most commendable fairness to, and respect for, the rights of his partner. About his conduct in these respects it may be truthfully said, in the light of the record, that it forms a conspicuous exception to the generality of cases under similar circumstances, and his claim furnishes a strong case appealing to one's sense of right and fairness; but, whether it should be recognized rests with others and not with us, since our duty is to administer the law as it is.

Another question presented and argued is, that no judgment for interest on the $3,000.00 from the date of the settlement should have been rendered, and in support of this contention reliance is had on section 3859 of the Kentucky Statutes, which says: ''A personal representative, after the expiration of two years from the time he qualifies, shall be charged with interest on the surplus assets in his hands from that period, and before the expiration of two years shall be charged with all interest realized on assets.'' In the case of Howe v. Winn, 150 Ky. 667, in construing that section of the statutes, it was held that ''Until the expiration of two years he (the personal representative) is chargeable with such interest as he realizes, or should realize, where under the circumstances, by ordinary care, interest should be realized.'' This case was referred to with approval in the recent case of Farmers Bank and Trust Co. v. Stanley, 190 Ky. 762. Under the construction of the statute, as thus made, it is quite probable that the defendant should be charged with interest on the $3,000.00 if there had been no settlement of the estate by him, since there is nothing to show that he could not by the exercise of ordinary care have realized interest on the $3,000.00 involved; but in this case a settlement was had on the date from which interest was charged after all of the estate had been converted into cash and it was not only ready for distribution, but a distribution was actually adjudged when the

settlement was confirmed by the county court. Under such circumstances there is no room for the application of the statute, since the reason for relieving the personal representative of the payment of interest, for the period of two years, was removed.   That reason was to give him that much time within which to ascertain the debts and to reduce the assets to cash and to get the estate in such condition as that it could be distributed.   The representative in this case had done all that work and had actually asked for, and had gotten, the permission of the court to make distribution in conformity with the account which he presented.   After the reduction of the assets of the estate to cash, and the ascertainment of the debts, there was nothing to do but pay out and distribute it to those entitled thereto and the representative should not be permitted to passively hold the estate without distribution after that time until the expiration of two years from his qualification without being charged with interest.

Plaintiff prayed and was granted in the court below an appeal from that part of the judgment which dismissed the petition in so far as it sought a correction of the county court settlement upon the other two items attacked; but that appeal has not been perfected and the questions relating to those items are not pressed, and we conclude that this dissatisfaction of plaintiff with the judgment has been abandoned.   The conclusion reached renders it unnecessary to consider any of the other questions urged for a reversal of the judgment, including the one of the court's refusal to transfer the trial of issues of fact to the ordinary docket, since if plaintiff was entitled to have the motion sustained a peremptory instruction to find in accordance with the judgment would have been proper.

Wherefore the judgment is affirmed.