BAKER, Respondent, vs. McGRANE, Administrator, Appellant.

*March 7—April 2, 1929.*

For the appellant there was a brief by *Conley & Conley* of Darlington and *Kopp & Brunckhorst* of Platteville, and oral argument by *Arthur W. Kopp* and *E. F. Conley*.

For the respondent there was a brief by *Fiedler & Garrigan* and *Roscoe Grimm,* all of Beloit, and oral argument by *E. C. Fiedler*.

ROSENBERRY, C. J. The proceeding in this case was begun in the county court of Lafayette county by filing a verified claim in the ordinary form. The administrator appeared and objected to the claims, alleged that they had been fully paid, and set up certain other defenses not material here. The matter being at issue in the county court, a stipulation was entered into to the effect that the claims

"be transferred and certified by the county court of Lafayette county, Wisconsin, to the circuit court of Lafayette county, Wisconsin, and that the same be heard, tried, and determined in and by the circuit court at the June 1928 term of said court; that the same be placed upon the calendar of said term as an issue of fact for jury; that notice of trial and the filing of note of issue be and the same is hereby waived and the clerk is authorized and directed to place said action upon the calendar for said term.

"It is further stipulated and agreed that all questions of

regularity or irregularity in the transfer and certification of said claims to the said court be and the same are hereby waived and the parties hereto do hereby consent that said circuit court shall have the same jurisdiction to hear and determine said claims as the said county court would have had if this stipulation were not made and all questions as to the jurisdiction of said circuit court are hereby waived."

The first contention made here is that the circuit court was without jurisdiction to try a controversy between the plaintiff and the estate of his deceased partner for the reason that an action at law could not be maintained upon such a matter until there had been a full settlement and accounting of the partnership business. No doubt such is the general rule. Here, however, it appears that there had been an accounting (after the death of Meloy, the plaintiff as surviving partner sold and accounted for the remaining partnership property); that the only matters as to which there was any controversy were the matters set out in the plaintiff's claim against the estate. The attorneys for the estate stipulated, and we think advisedly, that such claims might be tried by a jury as an action at law in the circuit court for Lafayette county, and if there remained any question as to the right of the circuit court to proceed with the trial of the action it was certainly waived by the stipulation, and the objection cannot now be raised nor was it properly raised in the circuit court for Lafayette county. We think the stipulation was not unadvisedly made. There is no showing in the evidence or any claim here that any different result would have been reached by an accounting in equity than was reached by the trial in this case. In any event the estate is foreclosed by the stipulation.

The Uniform Partnership Act provides:

"Section 123.15 (6). No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs."

This provision of the statute is merely declaratory of the common law. See 17 L. R. A. N. S. 385 and cases there cited. The question then arises in this case whether or not there is sufficient evidence to sustain the finding of the trial court to the effect that it was expressly agreed by the plaintiff and Charles Meloy that the plaintiff should receive a salary for his work, labor, superintendence, and services. The only evidence to sustain this finding was that given by one M. A. O'Brien, who testified that he had a talk with the deceased Meloy in April or May, 1925. He said: "I asked what his agreement with Baker was as to royalty and wages and he [Meloy] replied that Baker was to get wages, 'but the damn little fool doesn't draw his wages.'

It appears from the partnership books kept by Baker that he drew wages at the rate of $150 a month for part of the time and $200 per month for a part of the time from January 1, 1925, to August, 1926. At the time when Meloy had the conversation with O'Brien the plaintiff was entitled to wages but had not drawn them, and did not draw them until the following August, when he drew $1,200 for eight months' services, commencing January 1, 1925. The conversation with O'Brien quite likely referred to this period and not to the entire life of the partnership. It is claimed that the reason the plaintiff drew no wages on account of the services rendered prior to January 1, 1925, was that the business of the partnership was just starting and funds were not available, but it appears that partnership profits were distributed in the months prior to January 1, 1925. It also appears that after August, 1926, funds were available and distribution of partnership funds was made, but no payments were made to Baker on account of wages. The rule is that an agreement that one partner shall receive compensation for personal services to the partnership must be established by clear and satisfactory evidence. *Bemiss v. Widows' & Orphans' Home,* 191 Ky. 316, 230 S. W. 310; *Robertson*

*v. Mechanics Trust & Sav. Bank,* 184 Ky. 287, 211 S. W. 858.

The course of dealing between the parties in this action as disclosed by the records of the partnership business tends to show that there was no arrangement between the parties by which the plaintiff was to receive wages at times other than that for which compensation was actually paid. Other circumstances tending strongly to indicate that plaintiff did not expect compensation are that he nowhere entered such a charge against the partnership upon the books of the concern; never made any demand for it in the lifetime of Meloy; that he was made a partner and received very large profits out of a safe venture, the character of which was very well known to him as an experienced mining man. Upon consideration of all the evidence it is considered that it does not sustain the finding of the trial court to the effect that there was an express agreement that the plaintiff should receive wages as claimed.

With reference to the other items of cash and proceeds of property sold belonging to the plaintiff and money paid on account of taxes, which were allowed by the court, we are of opinion that the findings in regard thereto should be affirmed. It would serve no useful purpose to set forth the evidence in detail here. Such findings are therefore approved.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to the trial court to disallow the plaintiff's claim for wages and to allow the remainder of the plaintiff's claim as found by the trial court, and that judgment be entered accordingly.