## Shannon, et al. v. Duffield.

(Decided March 11, 1927.)

### Appeal from Harlan Circuit Court.

1. Fraudulent Conveyances—Subsequent Creditor, Showing Actual Fraud in Debtor's "Voluntary Conveyance," May have Such Conveyance Annulled (Ky. Stats., Sections 1907, 1907a).—Under Ky. Stats., sections 1907, 1907a, "voluntary conveyance," which is one without valuable consideration may be annuled by subsequent creditor, but he must allege and prove debtor's actual, fraudulent intent to defeat his subsequently incurred debt.

2. Fraudulent Conveyances—Subsequent Creditor, Seeking Cancellation of Debtor's Conveyance, May Show Debtor's Actual Fraud by Circumstances Constituting Badges of Fraud.—Actual, fraudulent intent by grantor to defeat subsequently incurred debt may be established by subsequent creditor, seeking cancellation of conveyance by circumstances constituting badges of fraud.

3. Fraudulent Conveyances—Debtor's Conveyance to Wife Will be Looked on With Suspicion, Where it Leaves Him Insolvent.—Conveyances between persons occupying confidential relation, which includes husband and wife, will be looked on with suspicion, where conveyance is by debtor and includes all or bulk of his property and leaves him insolvent.

4. Fraudulent Conveyances—Finding that Conveyances to Wife, Leaving Grantor Insolvent and Defeating Future Liability to Surety on Note, Should be Set Aside Held Not Against Preponderance of Evidence.—Chancellor's judgment that conveyance to wife, leaving grantor insolvent, should be set aside as defeating obligation on note to bank and future liability to surety on such note held not against preponderance of evidence, notwithstanding contention that conveyance was in consideration of wife's relinquishing inchoate right of dower in part of lot previously sold.

5. Appeal and Error—Judgment Will Not be Reversed for Insufficiency of Evidence, Unless Chancellor's Findings are Against Preponderance of Testimony.—Judgment in equity case will not be reversed for insufficiency of evidence, unless findings of chancellor are against preponderance of testimony.

CHAS. B. SPICER for appellants.

LYTTLE & MORGAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This action when first commenced was an ordinary one filed in the Harlan circuit court by the Harlan National Bank against appellant, C. R. Shannon, and appellee W. W. Duffield, to recover judgment against them for $7,100.00, with interest and costs, which in-

debtedness was evidenced by two notes executed to plaintiff in the action by defendant therein, one for $7,000.00 and the other for $100.00, and for unpaid interest on the first one. Neither defendant answered to the merits of the bank's suit, but defendant, Duffield, filed an answer which he made a cross-petition against his codefendant Shannon, and the latter's wife, in which he averred that he was only surety on the two notes and that C. B. Shannon was principal in each of them and received the sole benefit of their proceeds; that the original indebtedness was created on June 11, 1923, and was done pursuant to an agreement and understanding previously entered into between Shannon and Duffield whereby they with others were to organize a corporation for the purpose of conducting a garage business in the city of Harlan; that the negotiations for such organization and the conducting of such business were begun some time near the first of the year 1923, by Shannon approaching Duffield and requesting such an undertaking in the manner indicated; that the matter was discussed from time to time, but on or before the first day of May in that year the details of the organization of the corporation had been agreed to, including all the terms, some of which were that Duffield would take $8,000.00 and Shannon $7,000.00 each of the stock in the contemplated corporation and that the former would sign notes of the latter as surety for the purpose of obtaining funds for the payment of his stock, since he had no other property to pay for his subscriptions; that pursuant to the agreement and understanding and long before the incorporation, which was on June 4 of that year, the parties entered into a contract for the renting of a building in which to operate their contemplated garage business and in which they did so after they were organized; that without the knowledge of Duffield and with the actual fraudulent intent and purpose to defeat the contemplated debt to be incurred by Shannon for the purpose of raising funds to pay his subscriptions, including the inchoate liability of Duffield as surety thereon, the former on May 3, 1923, made a voluntary conveyance of his residence located in Harlan, and in which he and his wife resided, to the latter, and that the deed so executed was not recorded until May 12 thereafter and before which time the parties had rented the building in which to conduct their prospective business, although they were not at that time incorporated; that Duffield, who had agreed to become a surety as stated,

had no knowledge of such conveyance either at the time it was made or at the time he actually signed the notes as Shannon's surety, nor until nearly two years thereafter. It was also alleged that the attacked conveyance left C. B. Shannon completely insolvent.

The prayer of the cross-petition was that the conveyance by C. B. Shannon to his wife be set aside as fraudulently made and done for the purpose of defeating his obligations to the bank and his future liability to Duffield as his surety thereon, and which it was alleged the latter had paid after the judgment was rendered against him. A reply denied the material averments of the cross-petition, and upon trial, after evidence taken, the chancellor (the case having been transferred to equity) sustained the prayer of the cross-petition and set aside the conveyance as fraudulent, and to reverse that judgment Shannon and wife prosecute this appeal.

The cause of action relied on in the cross-petition is expressly conferred by section 1907 of the present Kentucky Statutes and the remedy is provided by the next (1907a) section of the statutes and proceeds upon the theory that the conveyance sought to be annulled was a voluntary one, i. e., without valuable consideration, and the statute in that instance (section 1907) makes it void "as to all his (creditors) then existing liabilities." But it does not confine the right to attack such conveyances only to those holding such "existing liabilities." On the contrary, the right of a *subsequent* creditor to annul the conveyance and subject the property to his debt is expressly recognized by the Statute; but as to such subsequent creditors the relief will not be afforded from the mere fact that the conveyance was voluntary or without valuable consideration, and in construing the section we have held in a number of cases that a subsequent creditor attacking such a conveyance in order to succeed must both allege and prove that was made with an *actual* fraudulent intent to defeat his subsequently incurred debt. Lyne v. Bank, 5 J. J. M. 545; Doyle v. Sleeper, 1 Dana 531; Lowry v. Fisher, 2 Bush 70; Slater v. Sherman, 5 Bush 206; Beatty v. Dudley, 80 Ky. 381; Bank of Commerce v. Payne, 86 Ky. 446; Marcum v. Marcum, 177 Ky. 186; Koch's Exr. v. Hall, 188 Ky. 378, and Garrison v. Sistrunk & Co., 213 Ky. 138.

It is equally well established that an actual fraudulent intent, in order to bring the case within the rule just

stated, may be established by circumstances constituting what is known in the law as "badges of fraud;" and, further, that such conveyances between persons occupying a confidential relation, which includes husband and wife, will be looked upon with suspicion, and particularly so when the conveyance includes all or the bulk of the debtor's property and leaves him insolvent. Sim v. Citizens' Bank, 173 Ky. 799, and Allen v. Ligon, 175 Ky. 767. It was both alleged and proved in this case that the house and lot that was conveyed was practically all the property that C. B. Shannon owned at the time and that it was worth in the neighborhood of $8,000.00, with encumbrances of something near $4,000.00. There was issued to him, however, $7,000.00 stock in the corporation that was organized, but it was attached to the note evidencing the indebtedness sued on herein, but because of his mismanagement of the corporation that stock was worth considerably less than its par value.

No convincing reason or any other (except as hereinafter noted) was advanced in the testimony of either C. B. Shannon or his wife for the making of the conveyance except to transfer the title from him to her, and which was done, as we have seen, on the eve of his embarking in a business undertaking the outcome of which was problematical and in which he agreed and was about to invest $7,000.00. In the light of the facts as so related we are not prepared to say that the chancellor found the requisite actual fraudulent intent on the part of C. B. Shannon in making the conveyance so as to entitle appellee to the relief sought, even if his debt should be con sidered as an exclusively subsequently contracted one.

It will be observed that the first part of the statute (1907) does not confine the liabilities for which such a voluntary conveyance will be treated as void, to actually existing debts; but, on the contrary, it is made applicable to then existing "liabilities." In the case of Daniels v. Goff, 192 Ky. 15, the difference between "existing indebtedness" and "existing liabilities" is pointed out, and it was held that the statute applied and rendered void such conveyances as to existing liabilities although the transactions between the parties had not reached the stage when they were ripened into fixed existing debts. In this case it will be noted that the formation of the corporation and the promises and agreements of the parties, whereby the inchoate liability of Duffield as the surety

of Shannon, were agreed upon and settled, were completed before the attacked conveyance was made, and the subsequent execution of those promises was pursuant to the prior fixed understanding and agreements with reference thereto. But whether that would be sufficient in and of itself to bring the case within the rule as applicable to *existing liabilities* we need not determine, and we refer to the prior understanding and agreement only as bearing on the intent with which the conveyance was made and which we think is a strong circumstance in support of the judgment.

But it is insisted that the conveyance was not voluntary within the meaning of the statute, but was supported by a valuable consideration. Such consideration, as argued, was that some two or three years before the attacked conveyance, Shannon sold a part of his lot to another and his wife joined in the deed therefor and that he made the conveyance in consideration of his wife agreeing to join in that deed and relinquishing her inchoate right of dower in the part of the lot thereby conveyed. But that alleged consideration is clearly an afterthought and is not so claimed by the wife in her testimony. On the contrary, she stated that her husband some time prior to the conveyance had an attack of some sort of ailment and that she was afraid that a second one, if it should occur, might imperil his life, and that at the suggestion of her father she requested the conveyance and her husband eventually made it. That attack was long prior to the beginning of any negotiations for the formation of the corporation and the incurring of its consequent obligations, and, to say the least of it, it looks a little suspicious that the conveyance should be postponed until after everything was in practical readiness to embark in the contemplated and more or less hazardous business to prosecute which her husband's obligation was created. Were we more doubtful as to the facts proven by the testimony in the case we would then not be authorized to reverse the judgment, unless the findings of the chancellor were against the preponderance of the testimony, but which we conclude is untrue.

Finding no error authorizing a reversal of the judgment, it is accordingly affirmed.