## Combs v. Roberts.

(Decided February 6, 1931.)

E. C. HYDEN and BAILEY P. WOOTTON for appellant.

GRANNIS BACH, TURNER & CREAL and WILLIAMS & ALLEN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

Cordelia Roberts, formerly Cordelia Combs, nee Cordelia Johnson, was married to Cooly Combs in the early part of this century. Cooly Combs died some time prior to 1915 leaving surviving him his widow, Cordelia, and his son, James Arlie Combs, the present appellant. At the time of his death, Cooly Combs was the owner of a tract of land in Knott county, which we shall hereafter

refer to as the Cooly Combs farm, and a lot in Jackson, Ky., upon which there was a hotel building known as the Combs Hotel. He left some personalty, including some money in bank. On his death, Mrs. Combs took up the management of the Combs Hotel. The record shows that she and her son, the appellant, disagreed very bitterly over the administration of the estate of Cooly Combs, and suits and counter suits were filed by each against the other about that estate. In the meantime, John Roberts, who was then married to the appellee, Lourania Roberts, and who had been a magistrate and later a United States deputy marshal, was in 1917 elected sheriff of Breathitt county. While Roberts was United States deputy marshal, and when in Jackson, he put up at the Combs Hotel, as his family lived out in the county. According to Mrs. Lourania Roberts, he and Cordelia Combs became very much infatuated with each other. According to the proof of Mrs. Lourania Roberts, the rumor of this infatuation soon spread abroad in the community. Meanwhile, Cordelia Combs and her son, Arlie Combs, entered into a compromise of their differences. By the terms of the compromise, Mrs. Combs was to deed to her son her dower interest in the Cooly Combs farm and pay him $1,000. Her son was to deed to her his interest in the Combs Hotel and release her from all other claims he then had against her. Deeds were prepared, signed, and acknowledged by both Mrs. Combs and her son carrying out this agreement, but at the request of Mrs. Combs, the deeds were placed in her trunk at the Combs Hotel and were not recorded. Arlie Combs then left Jackson, Ky. After he left, his mother got out the deed he had made her and recorded it, but did nothing with the deed she had made to him. Arlie Combs soon discovered what his mother had done, and at once launched into more litigation with his mother to compel her to carry out her side of the compromise agreement. In 1919 he secured a judgment against his mother requiring her to release to him her dower in the Cooly Combs farm and to pay him the sum of $1,000, for which he was given a lien on the hotel property.

Returning now to the matrimonial troubles of the Roberts, we find that, as time went on, Mrs. Lourania Roberts became more and more aware of and dissatisfied with the infatuation that existed between her husband and Cordelia Combs. In the summer of 1921 she determined to bring a suit for criminal conversation against

Cordelia Combs, but her husband, John Roberts, then being critically ill in Lexington, she postponed the filing of the suit. Roberts recovering his health sometime in the latter part of the summer of 1921, Mrs. Lourania Roberts determined to go ahead with her suit against Cordelia Combs. She planned to obtain an attachment when this suit was filed, and her daughter, who was acting as deputy sheriff for her father, but whose sympathy was with her mother, endeavored to procure a bondsman on the attachment bond. Whether this bondsman told John Roberts about this or not, it clearly appears that Roberts learned of his daughter's efforts before the suit was filed, because he then upbraided her and reproached her for her efforts in her mother's behalf. Roberts was then living in the Combs Hotel, then being run by Cordelia Combs At this time the appellant was living in Springfield, Ohio. Just before September 2, 1921, Cordelia Combs called her son up by long distance. Up to this time the appellant had never enforced the judgment he had secured against his mother in 1919, although he says he was pressing her all the time for a settlement. Over the telephone, Mrs. Combs, in substance, told her son that she was going to settle her differences with him and for him to get Mr. O. H. Pollard as his lawyer and she would make him a deed of compromise. On September 2, 1921, Mrs. Combs by deed conveyed the hotel property to her son and also by the same deed she conveyed a tract of land she owned in her own right in Knott county and which she had inherited from her people. Her son had no interest in this farm, which we shall call the Johnson farm. The purported consideration for this conveyance was the settlement of all claims Arlie Combs had against her, which, so far as this record shows, consisted only of the judgment for the $1,000 and interest above mentioned, secured by a lien on the property conveyed him. In this conveyance, Mrs. Combs made this reservation, which the appellant calls a life estate.

"The party of the first part reserves the right to the use and control of all or any of said property or any part thereof as she may elect to do so long as she sees fit to use, occupy or control said property for her own personal use and benefit and should said party of the first part elect not to use or control said property or fail to use or control said property for her personal use and benefit, then the party of the second part, his heirs and

assigns shall have the right to immediate possession of all of said property or any part thereof not in use, occupancy or control of the said party of the first part for her own personal use and benefit.''

The parties are at odds as to the value of the property conveyed by this deed to the appellant, but we are of opinion that a minimum value that could be put upon it at the time was $6,000. It is not fair to deduct from this $6,000 the value of a normal or usual life estate, because, although Mrs. Combs could remain on the property as long as she lived, if she so elected, yet at any time she could give up the use and occupancy of the property, and thereupon appellant would have the right, according to the deed, to its possession. At the best, he paid for this property by the surrender of his judgment less than $1,400. He was represented in the transaction by Mr. O. H. Pollard, and his mother by Mr. Patton. This deed was not put to record, although dated September 2d, until September 21st following. According to the county clerk of Breathitt county, Mrs. Combs gave him the deed of September 2d on the day of its execution or shortly thereafter, and told him not to record it until she gave him further notice. On September 19, 1921, the criminal conversation suit of Lourania Roberts against Cordelia Combs was filed. Immediately thereafter Mrs. Combs called the county clerk up and told him to record the deed, and this he did. This criminal conversation suit took several years for its disposition. On the first trial there was a judgment in favor of Mrs. Roberts for $10,000, which the trial court set aside. Before the second trial came on, she and John Roberts were divorced and John Roberts and Cordelia Combs had intermarried. On the second trial, the appellee, Lourania Roberts, again secured a judgment of $10,000 against Cordelia Roberts, which judgment was affirmed by this court. Roberts v. Roberts, 230 Ky. 165, 18 S. W. (2d) 981. In the meantime Mrs. Cordelia Roberts had brought suit against her son to set aside the deed she had made to him on September 2, 1921. A demurrer was sustained to her petition, and on appeal to this court the judgment was affirmed. Roberts v. Combs, 226 Ky. 97, 10 S. W. (2d) 608. After Mrs. Lourania Roberts had secured her judgment in the second trial of her criminal conversation suit against Cordelia Roberts and that judgment had been affirmed by this court and the mandate filed in the circuit

court, this suit was brought by her against Cordelia Roberts and the appellant, James Arlie Combs, to set aside the deed of September, 1921, as fraudulent and made with intent to cheat, hinder, delay, and defraud the creditors of Cordelia Roberts. Cordelia Roberts filed no answer in this suit and took no part as a party or a witness in its trial or preparation. The appellant defended on the ground that he was a bona fide purchaser of the property for value, and that, if his mother had acted fraudulently, he had acted in ignorance of that fraud. On final hearing, the court set aside the conveyance of September 2, 1921, but gave the appellant, Arlie Combs, a lien superior to any claim of the present appellee on the hotel property for the $1,000 and interest his mother owed him. Lourania Roberts makes no complaint of this judgment but Arlie Combs appeals.

In addition to the facts as outlined above, the appellee proved that after the conveyance the appellant, in substance, had stated to several different people on different occasions that his mother would not have made him the deed she did but for the litigation she was having with Lourania Roberts, and that he supposed his mother would rather he have the property than for Lourania to get it.

The appellant in his deposition flatly denied knowing at the time he took the conveyance of any fraud or wrong on the part of his mother in making the deed. He undertook to take the deposition of his attorney, Mr. Pollard. It is true this deposition was later suppressed, and properly so for lack of adequate notice, but, had it not been suppressed, it would not have helped him, for Mr. Pollard took the curious position of declining to answer his own client's questions on the grounds that the matters inquired about were privileged communications between him and such client. It seems to us the client by asking the questions clearly waived the privilege. At all events, the appellant made no effort to have the court require Mr. Pollard to answer the questions or to retake his deposition. Of course, the appellant is bound by the knowledge of such facts as Mr. Pollard, his attorney, had acquired knowledge of in the transaction of this business for him with Cordelia Combs. Lisanby v. I. C. R. Co., 209 Ky. 325, 272 S. W. 753. The appellee having shown that this property was conveyed to the appellant for not much more than a fourth of its worth; that it was

undoubtedly disposed of by Cordelia Combs to protect it against any judgment Lourania Roberts might sustain; that the rumor of the infatuation between Cordelia Combs and John Roberts was so wide-spread in the community and that talk of a criminal conversation suit had gotten abroad before the deed was executed; that Mr. Pollard, who resided in this community, was endeavoring to settle the appellant's claim against his mother in this atmosphere which Mr. Pollard must have known; that the character of estate reserved by Mrs. Combs in the deed was such a one as indicated a carefully thought out plan of protection against the claims or demands of creditors; that, after the conveyance, appellant had made statements about it at least equivocal in their nature— all threw the burden upon this son of the grantor to establish that the transaction was bona fide. His utter failure to disprove by his own lawyer, who acted for him, the presumptions raised by the proof of the appellee whilst he takes the position that he left everything to this lawyer in this transaction, leaves him in no enviable position. In the case of Magic City Coal & Feed Co. v. Lewis, 164 Ky. 454, 175 S. W. 992, we said that, if the circumstances under which the transfer is made are suspicious, the failure of the party to produce available explanatory or rebutting evidence is a badge of fraud. And in the case of McDonough v. McGowan, 165 Ky. 425, 177 S. W. 277, we held that, where badges of fraud are proven, the grantee must establish that the transaction was bona fide. This the appellant has failed to do in this case after the appellee had abundantly proven the badges of fraud and indeed the actual fraud on the part of the grantor, Cordelia Combs. The chancellor found as a matter of fact that this conveyance was a fraudulent one within the inhibition of section 1906 of the Statutes, and that the appellant was not a bona fide purchaser. We do not think the chancellor erred in his finding.

Appellant contends that his amended answer claiming recompense for improvements put upon the Johnson farm should have been filed. Waiving the fact that it came too late, it being offered after all the proof had been taken, we are met with the fact that it has no place in this case, for, if the conveyance was bona fide, appellant would win, and, if not, he cannot recover for improvements put upon the property.

The judgment of the chancellor is affirmed.