## Booth et al. v. Bell Grocery Company.

## Burkhart et al. v. Same.

(Decided June 9, 1931.)

GEORGE R. POPE and JAMES O. BAKER for appellants.

J. B. SNYDER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

These two appeals have been consolidated and will be considered in one opinion.

The action was originally brought in the month of March, 1929, by the Bell Grocery Company, a corporation, against Ross Booth and A. E. Lewis, partners doing business as City Grocery Company, to recover the sum of $993.15 for merchandise sold and delivered to the defendants. An attachment was obtained and levied on certain personal property, but plaintiff received none of the proceeds of the sale. Shortly thereafter plaintiff filed an amended petition making S. B. Burkhart and A. Vass parties defendant, and charging that at the time the goods were purchased by the City Grocery Company

522

they were copartners with Booth and Lewis in that company, and that they never gave plaintiff notice of their withdrawal from the firm. Still later plaintiff filed a second amended petition making Nannie Booth a party defendant, and charging that on or about the 14th of September, 1927, Ross Booth, with the fraudulent intent and purpose to cheat, hinder, and delay his creditors, purchased a certain tract of land from Nancy Nolan Howard, and caused same to be conveyed jointly to himself and his wife, Nannie Booth. On final hearing the chancellor set aside the deed and rendered personal judgment against Burkhart.

The evidence in brief is as follows: F. M. Meadows, vice president and general manager of the Bell Grocery Company, testified that his company began selling the City Grocery Company in the month of April, 1927. When the account was closed the City Grocery Company owed $993.15, and a cold check amounting to $50. They received two cold checks, one on October 2, 1928, for $400.48, and the other on October 15th, for $170.05. The goods were sold on the faith of these checks, which were not paid at the time, but may have been paid later. Their records did not show that the City Grocery Company ever paid up its account in full. Its method of doing business was to pay a bill, and at the same time purchase other goods. He never received any notice, verbal or otherwise, that S. B. Burkhart or A. Vass had sold out their interest in the Company. J. A. Whitaker testified that he traveled for the Bell Grocery Company and sold the goods to the City Grocery Company. During the time the City Grocery Company did business, Ross Booth, Jack Hyden, A. Vass, Lewis, Burkhart, and a fellow by the name of Howard were partners. On two occasions when he asked Booth for payment, Booth told him that the reason he could not pay was that he had to pay $500 on his home. After Booth bought the property he paid $6,000 or $8,000 for merchandise. His account was paid up practically a time or two, if the checks he gave had been good. He made the checks good, except the last one. Mr. Burkhart was associated with the firm and paid one or two bills of goods. He was never active in the management. Mr. Burkhart never gave written or verbal notice to him that he was no longer connected with the firm. J. C. Baker, trustee in bankruptcy for Ross Booth, testified that he looked at the property which had been conveyed to Ross Booth and wife, and there

being a purchase-money lien on it he elected not to take it.

Ross Booth testified that S. B. Burkhart was a partner for about eight months, but that he sold out to A. Vass and Jack Hyden on September 14, 1927, who paid part of the consideration and gave Burkhart a mortgage on the fixtures for the balance due him. When he bought the property, which was conveyed to him and his wife, he paid $545 down, and afterwards paid $1,155, or a total of $1,700. At the time he testified he owed a balance of $800. At the time he purchased the property he owed the Bell Grocery Company $144.12, and to the best of his knowledge made them a payment of $63.17 that month. Since he had purchased the property he had paid the Bell Grocery Company a total of about $8,000. He made good the cold check of $400.48. At one time he went to make the other check good, but they could not find it. He caused the deed to be made to him and his wife because he bought it for a home and she was helping him to make a living. He never had any intent to defraud the Bell Grocery Company. They were doing from $4,000 to $6,000 worth of business a month. At the time of the attachment he owed about $1,800. After Burkhart sold out they were square with the Bell Grocery Company. After he purchased the property in question he went out of the business twice. During that time the business was run in the same name.

Mr. Burkhart testified that he was a partner in the City Grocery Company from February, 1927, to September, 1927. At that time he had a one-half interest which he sold to A. Vass. At the time of the sale he paid Mr. Whitaker off and notified him that he was not connected with the firm any longer, but did not notify the Bell Grocery Company in writing.

Mrs. Nannie Booth testified that all the payments on the property bought from Mr. Howard were made by her husband; that she sometimes waited on customers and helped fill the orders, but did not draw any salary for her services.

Later on Ross Booth was recalled and testified that Mr. Burkhart told Mr. Whitaker in person in the store that he was no longer connected with the City Grocery Company, but could not remember what day it was, and that he himself told Whitaker who comprised the firm.

It further developed on the hearing that the deed which was executed on September 14, 1927, was never recorded until February 23, 1928.

1. We shall first consider the propriety of that part of the judgment setting aside the conveyance. No claim of homestead was made in this action, nor was it pleaded and proved that the property involved was set aside as a homestead in the bankruptcy proceeding. All that appears is that the trustee elected not to take the property. In the circumstances no question of homestead is involved. At the time of the conveyance Booth was indebted to the Bell Grocery Company. Booth did not owe his wife anything and cannot justify on the ground that he bought the property for a home and she was helping him to make a living. In the circumstances the conveyance was purely voluntary. Though made in September, 1927, it was not recorded until February 23, 1928. Though, after the conveyance was made, Ross sometimes paid his bill with checks, all of which were thereafter paid, except one, he always purchased an additional bill of goods, leaving the firm still indebted to the Bell Grocery Company. After the original payment of $545, he made additional payments amounting to $1,155. When these payments were made the partnership was never free from debt, and he admitted that he could pay up had it not been for the payments on his home. Taking into consideration the secrecy attending the conveyance placing in his wife's name a one-half interest in the property, the payment on the purchase price of money to which his creditors were entitled, and the giving of cold checks, some of which were not paid until some time later, and one of which was not paid at all, we are constrained to agree with the chancellor that Booth caused the conveyance to be made to his wife with the intent to defraud his creditors, including the Bell Grocery Company, Magic City Coal & Feed Co. v. Lewis, 164 Ky. 454, 175 S. W. 992; Shannon v. Duffield, 218 Ky. 770, 292 S. W. 322. Hence the chancellor did not err in setting aside the conveyance to the wife, and ordering the entire property sold for the payment of Booth's debts.

2. Burkhart was a member of the partnership conducted in the name of City Grocery Company for a period of six months. During that time, and with knowledge that he was a partner, the Bell Grocery Company sold goods to the partnership. After his retirement the Bell Grocery Company continued to sell goods

to the partnership, which conducted its business in the same name. In the circumstances he continued liable for partnership debts contracted after his retirement, unless the Bell Grocery Company knew of his retirement at the time the debts were created. Hammonds v. First National Bank of Russell Springs, 219 Ky. 298, 292 S. W. 827. Burkhart testified that he gave notice of his retirement to Whitaker, the traveling agent, and is confirmed by Booth, who testified that both he and Burkhart gave such notice. On the other hand, Whitaker denies that he received any notice of Burkhart's retirement, and testifies that he saw Burkhart at the grocery as frequently after his retirement as he did before. The action is at common law, and was submitted to and heard by the chancellor without objection. Where that is the case, his judgment will be treated as the verdict of a properly instructed jury and, unless palpably against the evidence, will be sustained. Pittsburgh, C. & St. L. R. Co. v. Woolley, 12 Bush, 451. The case is one that turns on the credibility of the witnesses. Had the case been submitted to a jury, we could not say that its finding is flagrantly against the evidence. Applying the same rule to the chancellor's finding the conclusion must be the same, and the judgment will not be set aside.

The judgment in each case is affirmed.