## Wyan et al v. Raisin Monumental Company.

(Decided April 19, 1932.)

432

C. R. LUKER for appellants.

C. C. WILLIAMS for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On November 2, 1927, the Raisin Monumental Company, a corporation, hereinafter called the company, instituted this action against Jesse H. Wyan, Mrs. L. J. Wyan, his wife, P. H. Wyan, and May Wyan, seeking to recover the sum of $1,242.19 balance due for fertilizer sold to Jesse H. Wyan. After stating necessary grounds for attachment against Jesse H. Wyan, it was alleged that, with the purpose to cheat, hinder, delay, and defraud his creditors, he had, without consideration, conveyed to Mrs. L. J. Wyan a tract of land containing 62.5 acres and a one-half undivided interest in a tract containing 2.5 acres; and had also conveyed to his son and daughter, P. H. Wyan and May Wyan, a tract containing about 63 acres. In addition to the prayer for judgment for the amount of the alleged debt, it asked for a general order of attachment against Jesse H. Wyan and that the deed conveying the property be set aside.

By answer as amended, defendants, in addition to a general denial of the allegations of the petition, affirmatively pleaded in bar of plaintiff's right to maintain the action in the Laurel circuit court that on the 12th day of May, 1928, Jesse H. Wyan filed a petition in bankruptcy in the United States District Court for the Eastern District of Kentucky, and listed as one of his liabilities the account forming the basis of plaintiff's action, and on hearing had been discharged as a bankrupt.

Plaintiff filed in the action an order of the referee in bankruptcy authorizing the prosecution of this action in the Laurel circuit court rather than in the United States District Court, but it was alleged by way of amended answer that the purported order which had been filed by plaintiff was not a copy of any order made by the referee in the bankruptcy suit.

On final hearing, it was adjudged that plaintiff recover the balance due on its account, and that the conveyance from Jesse H. Wyan to his wife of the 62.5-acre tract and the conveyance from him to his daughter and son of the tract containing about 63 acres were fraudulent, and that the deeds by which these tracts were conveyed be canceled and set aside. It was further adjudged that the attachment be sustained, and that the two tracts of land or so much thereof as was necessary to satisfy the judgment be sold. Defendants have appealed.

Appellant Jesse H. Wyan purchased fertilizer from appellee under the terms of a written contract entered into between them and dated November 9, 1925, but which was finally consummated when confirmed by the company on December 30, 1925. It is shown by proof and by itemized statement of account that goods were delivered to Jesse H. Wyan on various dates beginning March 10, 1926, and up to and including June 4, of that year. It appears that only one of the shipments was made prior to the conveyances attacked as fraudulent. Some question is made as to the correctness of the account sued on, it being contended by appellant that he had not been given proper credit for freight and discounts for years prior to 1926; however, he testified that settlement had been made for those years, and he had made no claim for such additional credit until he appeared upon the witness stand. He practically admitted the correctness of the account, and it is shown that he listed the amount of this account as one of his liabilities in the bankruptcy proceedings. An officer and a salesman of appellee testified that the account was correct, and that Mr. Wyan had so admitted to them. In such circumstances, it cannot be said that the court improperly awarded appellee judgment for the full amount of its claim.

Mr. Wyan and his wife testified that the consideration for the conveyance of the 62.5 acre tract to her was

$600. This, however, was not paid in cash, but was made up of sums theretofore furnished him by her. As we gather from the evidence, he had owned this tract of land for something over thirty years, having purchased it before his marriage. Their evidence is to the effect that he only paid $50 down, and after their marriage his wife assisted in paying the balance due thereon. According to the evidence of Mr. and Mrs. Wyan, the sums furnished him at various times were out of money she received from her father's estate or were derived by her from the sale of farm produce. No books were kept and no notes or other evidences of indebtedness passed between them. They did produce in evidence two canceled checks aggregating about $200 drawn on her account by Mr. Wyan, and they testified that this sum, together with the proceeds of the sale of a $100 Liberty bond, had been used by him. Their evidence was very vague, indefinite, and uncertain concerning all other sums claimed to have been advanced by Mrs. Wyan to her husband, and there is little evidence as to any contract, agreement, or understanding that she would be reimbursed for these advancements.

Mrs. Wyan testified that she received $700 from her father's estate which she placed in a savings account and had kept intact. This, we gather constituted the bulk of what she received from that source. In addition to the sums she claims to have furnished to her husband, she testified that she had bought and paid for other real estate, taking deeds in her own name. She admits that the consideration for one of these pieces of property was $3,000, and she had paid on this all except about $800. She paid cash for another piece of property, but in that instance the consideration was small. While the recited consideration in the deed to the son and daughter was $600, it is not claimed that any cash was paid at the time of the transaction, and parties admit that the real consideration was $300. This sum they testified was due from the father to his son for money furnished and for services rendered. They testified that the son lent the father $100 in cash, and had worked for him for about two years; however, they had no understanding in regard to the services or the compensation to be paid, but agreed upon the value of the services when the deed was made. The $100 claimed to have been advanced was made up of amounts advanced at different

times. All of the parties admitted that the daughter knew nothing whatever about the conveyance until after the deed had been recorded, and that she did not request the conveyance to be made to her, and paid nothing whatever to her father. In addition to the three conveyances in question, it is in evidence that the father transferred to his son a stock of goods, and these conveyances and transfers, occurring within a period of a few days, divested Mr. Wyan of all property subject to execution. When confronted by representatives of the company with the fact that he had disposed of his property, Mr. Wyan stated that he had not made these transfers with a purpose of defeating their claim but to avoid his liability as surety for indebtedness of his son Vincent Wyan which he claimed to be unjust. They further testified that he stated their claim was just, and expressed a willingness and intention to pay it. Mr. Wyan admitted these statements in part. There is no evidence that J. H. Wyan has received a discharge in bankruptcy.

It is argued by counsel for appellants that practically all the indebtedness forming the basis of this action was incurred subsequent to the time the conveyances were made, and that in no event are they fraudulent as to such subsequent indebtedness. In the case of Sterk et ux. v. Redman, 166 Ky. 693, 179 S. W. 577, 578, this court disposed of a similar contention. In that case is appears that Sterk and Redman entered into a contract whereby the former agreed to pay the latter a fixed price for staves to be furnished and paid for every thirty days from the date of invoice. On December 17 Sterk received the first shipment for which he paid according to the terms of the contract. On January 21 he received another shipment, and on February 18 he received a third shipment without ever having paid for the second. On January 29, 1913, Sterk conveyed to his wife all his visible property. In a suit between the parties in which Redman sought judgment for the balance due and to have the conveyances from Sterk to his wife set aside as fraudulent, he was granted the relief sought, and this court, in affirming the judgment said:

"Under the express terms of section 1907 of the Kentucky Statutes the conveyance by Sterk to his wife was void as to Redman's debt. The contract was made between Redman and Sterk on the

14th day of December, 1912, and the liability grew out of that contract, and necessarily the conveyance of his property, without consideration, on the 29th of January, 1913, to his wife during the existence of this liability, was void as to Redman's debt.''

But, even if there had been no contract, it would not necessarily follow that appellant's contention is correct, since a deed made to defraud creditors may be void as to subsequent as well as to existing creditors. Little v. Ragan, 83 Ky. 321, 7 Ky. Law Rep. 391; James v. Stokes et al., 203 Ky. 127, 261 S. W. 868.

It is further argued that the burden was upon appellee to establish that these conveyances were fraudulent and that it has failed to meet that burden. On the other hand, appellants have established by practically uncontradicted evidence that the conveyances were made for a valuable consideration and are not shown to be fraudulent or void. It is true that one attacking a conveyance as fraudulent has the burden of establishing his allegations. Marler v. Greenburg Iron Co., 216 Ky. 682, 288 S. W. 676; Winfrey's Trustee v. Winfrey, 150 Ky. 138, 150 S. W. 42; Siddens v. Ennis, 217 Ky. 810, 290 S. W. 669; Stewart v. Wheeler, 220 Ky. 687, 295 S. W. 991. But the burden shifts when it is established that the conveyance was attended with badges of fraud. Griggs v. Crane's Trustee, 179 Ky. 48, 200 S. W. 317; Stewart v. Wheeler, supra; Francis v. Vastine, 229 Ky. 431, 17 S. W. (2d) 419. False recital as to the consideration in a conveyance, the insolvency of the grantor, and the transfer of all of a debtor's property have been recognized by this court as badges of fraud. Magic City Coal & Feed Company v. Lewis, 164 Ky. 454, 175 S. W. 992; James v. Stokes, 203 Ky. 127, 261 S. W. 868; Roberts, Johnson & Rand v. Baker, 224 Ky. 414, 6 S. W. (2d) 474.

It is established beyond a doubt that there was an erroneous or false recital of the consideration as to one of these conveyances; that at the time this and other conveyances were made, Mr. Wyan was either actually insolvent or deeply involved financially, and that at about this same time he disposed of all visible property, leaving nothing subject to execution. With this established, the burden shifted to appellants to establish the good faith of these transactions.

Since confidential relations, such as husband and wife, or parent and child, afford opportunity for fraudulent transactions which are often difficult to detect or to establish by direct proof, courts will closely scrutinize such transactions. Hickman Bank & Trust Co. v. Pickard & Mayberry, 207 Ky. 772, 270 S. W. 30; Turner v. Hammock, 229 Ky. 836, 18 S. W. (2d) 285; Leitchfield Milling Co. v. Rogers et ux., 239 Ky. 481, 39 S. W. (2d) 961. Transfers and conveyances whereby a debtor disposes of all his property to his wife should and will be looked upon with suspicion. Perry v. Krish & Co., 157 Ky. 109, 162 S. W. 555; Shannon v. Duffield, 218 Ky. 770, 292 S. W. 322.

As pointed out in the case of Mount et ux. v. Fourth Street Bank, 156 Ky. 503, 161 S. W. 220, 221, courts are not concluded or bound by the evidence of a husband and wife as to the payment of the consideration stated in the deed, but may be controlled by facts and circumstances surrounding the case, if entitled to more weight than the evidence of the parties to the transaction. In the course of that opinion it was said:

". . . And if the courts were bound to accept as true their declarations as to what occurred, without feeling free to look behind the statements and see, in the light of the surrounding circumstances, what actually happened, the creditors of the husband could rarely succeed in showing the real nature of the transaction or the fact that it was arranged to defeat his creditors."

And what was said in that case as between husband and wife has equal application as between parents and children. In the light of the record, we would not feel justified in disturbing the chancellor's finding that the conveyances involved were fraudulent.

The contention that the circuit court was without jurisdiction to proceed with this case because of the bankruptcy proceeding initiated many months after the petition herein was filed is without merit. In the first place, we see no reason for holding the written authority of the referee in bankruptcy for the action to proceed in the circuit court to final determination not to be genuine, and, in the second place, there is ample authority for holding that the state court, having acquired jurisdiction, might proceed to determine the controversy, not-

withstanding the bankruptcy proceedings. Metcalf v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122; Pickens v. Roy, 187 U. S. 177, 23 S. Ct. 78, 47 L. Ed. 128; Loveland on Bankruptcy, vol. 142. We find nothing in cases or authorities cited by counsel for appellants at variance with this conclusion.

Judgment affirmed.