## Jones et al. v. Jones.

(Decided May 15, 1934.)

476

CHARLES FERGUSON for appellants.
C. H. WILSON and J. D. MOCQUOT for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The record in this case is not a chapter or a book. It is a work of twenty volumes, recording a bitter conflict among three brothers arising from the operation of and an effort to settle a farm partnership venture. In the main two of the brothers are on the same side of the battle alignment. A fourth brother, who essayed to act as peacemaker in the role of an agreed arbitrator, became involved in the quarrel also, although not in a financial way. The attorneys have stood loyally by their respective clients and have employed every legitimate weapon of legal warfare and exhausted all available ammunition. There is presented a voluminous and confusing record, containing much concerning the private quarrels that have no place in it. We have already written one chapter in the case in sustaining the appointment of a receiver for the property. Jones v. Jones, 229 Ky. 71, 16 S. W. (2d) 503.

In 1924 or 1925 the partnership was formed by Dr. F. A. Jones, D. F. Jones, and their brother-in-law, W. S. Watson, to farm and raise stock on a tract of 344 acres of an island in the Tennessee river, lying in both Livingston and Lyon counties. Not long thereafter O. W. Jones purchased Watson's interest, and the firm became known as Jones Brothers. D. F. Jones was a farmer living eight or ten miles from the property. Dr. F. A. Jones was a practicing physician residing in Paducah, which is about twenty-five miles from the island. O. W. Jones was a school teacher and lived in Florida. It seems to have been agreed that D. F. Jones should have active management of the firm. Dr. Jones personally advanced money to the partnership and made loans to his brothers. After a brief period the venture became unprofitable, due to high water flooding the property, and perhaps other causes, so there was a loss of approximately $12,000. Distrust arose among the partners, and on June 10, 1927, it was agreed in writing that a fourth brother, Charles M. Jones, who was a school superintendent in Florida, should wind up the affairs and settle the difficulties. It was contemplated that this would be done promptly, but there was great delay, and, as indicated in the former opinion, considerable acrimony developed, particularly between Dr. Jones and the arbitrator, whom he accused of unfairness and preju-

478

dice. A partial report was made by the arbitrator, which was unsatisfactory to Dr. Jones, and he filed this suit for a receiver and to have the court settle the partnership. The receiver was appointed several months later. In the meantime the arbitrator proceeded with his work, and a few days after the appointment of the receiver he made what he deemed a "final audit," which showed that O. W. Jones owed F. A. Jones $355.08, and that Dr. F. A. Jones owed D. F. Jones $160.14. But we affirmed the chancellor's action in appointing the receiver and putting him in charge of the property. This was upon the ground that an arbitration agreement is revocable before a final award and that the bringing of the suit was a revocation. Finally, the case was referred to a special commissioner, who was also the receiver.

The commissioner's report set forth in detail the various charges and credits against and in favor of the parties. Numerous specific exceptions were filed to that report by all parties. The judgment dissolved the partnership and declared a settlement. All demurrers, motions, and exceptions were overruled and the commissioner's report was substantially confirmed.

Dr. F. A. Jones was awarded judgment against D. F. Jones in the following amounts: For one-third of the vendor's lien notes aggregating $3,810.15, i. e., for $1,270.05, and his undivided one-third interest in the property was ordered sold in satisfaction; for $3,999.10 on account of twelve certain unsecured notes; for one-half of three notes aggregating $2,960.60, i. e., $1,480.30, which had been executed by D. F. Jones and W. S. Watson, jointly; and for $169.05 as the net sum due in the settlement of the partnership account. F. A. Jones was awarded judgment against O. W. Jones for one-third of the vendor's lien notes, i. e., $1,270.05, and his interest in the land was ordered sold in satisfaction; for $1,370.13, the aggregate of three individual unsecured notes; for $1,076.39 on account of the partnership. Judgment was awarded D. F. Jones against O. W. Jones for $907.34 on that account. These sums represent the principal of the debts, the interest from various dates being in addition. N. D. Washburn, who had been a tenant in the partnership, was adjudged to own an undivided half interest in certain personal property on the farm. It was held that he owed the firm $126.77, and this property was ordered sold in satisfaction thereof. About

the time of the breaking up of the partnership D. F. Jones had conveyed his interest in the land to C. W. Cothron. This conveyance was set aside as fraudulent. A fee of $1,000 was allowed the attorneys of Dr. Jones for legal services rendered him as plaintiff in this action which was ordered taxed as part of the court costs. The special commissioner was allowed $750 for his services up to the time of the judgment. He was ordered to reduce to cash the personal property reported to be in his possession at the time and to make a report at the next term of the court. Condemning the record as far too large and holding that Dr. F. A. Jones and D. F. Jones were responsible for it, the court ordered that each should bear two-fifths of the cost and O. W. Jones one-fifth.

The correctness of that judgment, both in what it allows and disallows by ignoring the claims submitted, is now before us. Dr. F. A. Jones has no cross-appeal and his affirmative claims are not to be considered. The case presents but few questions of law. The indefiniteness or lack of organization and of any system of accounting, the confusion of private relations of two of the parties with the business of the partnership, together with a mass of conflicting evidence on all of the items, have rendered it impossible for the special commissioner, the trial court, or this court to ascertain with exactness the status of the affairs. The parties cannot reasonably expect it when they have conducted their business in as loose a manner as is disclosed here. Cf. Hume v. McNees, 10 S. W. 384, 10 Ky. Law Rep. 947. The record is filled with conflicting evidence and its recitation would serve no purpose. So, we shall merely state our ultimate conclusions on the respective disputed claims of the appellants as presented in the briefs. Technical questions of practice may be passed by as unsubstantial or nonprejudicial.

The judgment in favor of F. A. Jones against D. F. Jones for $3,999.10 on account of the principal of the unsecured personal notes includes $2,960.60, the amount of joint notes of D. F. Jones and W. S. Watson. This was an erroneous duplication, for the judgment for one-half of that sum was also rendered against D. F. Jones in a subsequent paragraph. The judgment on the individual personal notes should be for $1,038.50 and interest, instead of $3,999.10.

The item of $2,960.60 is made up of a joint note of D. F. Jones and W. S. Watson for $2,597.31 executed November 15, 1924, their note for $200 executed January 22, 1925, and a third note for $163.29, which is not questioned. D. F. Jones pleaded, and he has insisted, that these two notes were made void by the fact that after their execution and delivery F. A. Jones changed the rate of interest on each of them from 6 per cent. to 8 per cent. without the consent of the makers. The commissioner found that the notes had been so altered, but as they were given in good faith and for value he reported that the makers ought not to be released from their liability under them. The judgment gave effect to that report. Dr. Jones claimed that the change in the interest rate was made with the consent of the payors. The evidence convinces us that they did not consent and that the alterations were made without right or authority. Section 3720b-124 of the Statutes provides:

> "Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration and subsequent endorsers."

The next section defines or declares what are material alterations and specifically says that any alteration which changes "the sum payable, either for principal or interest," and "any other change or addition which alters the effect of the instrument in any respect, is a material alteration." We cannot escape the conclusion, therefore, that these two notes were rendered void by this alteration and discharged the makers from liability thereunder. It will not do to say that since 8 per cent. is usurious and the payee could not under the law collect more than 6 per cent., the change is not material, or that it worked no detriment to the parties. Mitchell v. Reed, 106 S. W. 833, 32 Ky. Law Rep. 683; Kimberley v. Penix, 230 Ky. 91, 18 S. W. (2d) 858; Annotations, 44 A. L. R. 1249; Idaho State Bank v. Hooper Sugar Co., 74 Utah, 24, 276 P. 659, 68 A. L. R. 969; 1 R. C. L. 977; 2 C. J. 1178; Brannan's Negotiable Instruments Law, sec. 125, p. 805. While it may be said that the voiding of a note under these provisions of the Negotiable Instrument Act does not prevent a recovery upon the original obligation evidenced by the note, there is no pleading or any claim rested upon that original obligation presented in this case. It was error, therefore, to

render judgment on these two notes against D. F. Jones.

In the matter of the partnership accounts, the commissioner found that the firm owed D. F. Jones $2,432.01, owed F. A. Jones $3,629.34, and owed O. W. Jones $400. Since each of the parties owned a one-third interest in the farm, the net result was that D. F. Jones owed F. A. Jones $399.11; that O. W. Jones owed F. A. Jones $1,076.45; and that O. W. Jones owed D. F. Jones $677.34. As recited above, the net indebtedness on account of the partnership was slightly changed by the judgment. Thus it was held by the court that D. F. Jones owed F. A. Jones $169.05, a difference of $230.06. The judgment does not disclose the basis of its award, and since we are unable to determine what items entered into it, we must look back to the commissioner's report where the items are shown and the increases in the allowances to the parties are to be added to his report. The changes in the judgment will, of course, work out.

There was a lighthouse on the island. Dr. Jones reported all along that he was receiving $10 a month from the government for its maintenance. One of the initial causes of the breaking up of the friendly partnership relations was the discovery by the other two brothers that instead of $10 he had been collecting $12 a month. He undertook to justify his action by saying that he had retained the difference to cover his railroad fare to the farm once or twice a month. Claim for his respective one-third of the difference was made by each of the other two against Dr. Jones from the beginning up to the commencement of the next ensuing September, 1929, term of the court, and those claims are being made and argued on the appeal. We find that in the settlement the commissioner charged Dr. Jones with $12 for each month from May 19, 1925, to October 1, 1927. Charles M. Jones, as arbitrator, was given control and undertook to make a settlement in June, 1927. The receiver was named November 30, 1928, and it is shown that the arbitrator paid him $469.40 and that Dr. Jones paid him $105.94. We are not able to tell just what these payments cover, and under the circumstances we may assume that they include the amounts collected on account of the lighthouse after October 1, 1927. Therefore, the claims of D. F. Jones and O. W. Jones on this account were properly disallowed.

During the period of the partnership D. F. Jones

operated two farms, owned by him individually, through tenants. But they were compartively small. He lived eight or ten miles from the island. We think it was agreed that he should have the active management of the partnership and should be paid a reasonable sum for his services. The firm engaged in the feeding of cattle and hogs on a large scale. The evidence shows that D. F. Jones devoted practically all of his time to looking after the business of the firm. He went about buying and selling stock and was at the island almost daily. In busy seasons he got there early and left quite late. During periods of high water he was there all of the time night and day. He asserted a claim for 1,084 days, from June 1, 1925, to November 20, 1928, at the rate of $5 a day. The testimony tends to sustain his entire claim, but the commissioner concluded that since he was looking after his own individual business during this time that he probably averaged two days out of each week in looking after the business of the firm and was entitled to $5 a day as fair and reasonable compensation for those services. So he allowed $1,810 on this account. This is about $40 a month. Wages and salaries were high during this period and the farm laborer was paid as much or more than that. It is not very practical to fix compensation for superintendence or management upon a per diem basis. We have reached the conclusion that his reasonable compensation should be an average of $75 a month and that he is entitled to recover of the firm $3,375 for his services.

During the winter of 1926-27, on account of high water, it was necessary to move fifty-six head of cattle from the island to the farm of D. F. Jones. He furnished feed for this stock and made a claim of 25 cents a day per head for 120 days, or a total of $1,860. The commissioner allowed him $10 per head for the season, which is equivalent to 8 1/3 cents per day per head and aggregates $560. D. F. Jones testified to the quantities of feed he had furnished this stock and that its market value was $1,860. There is some opinion evidence to the contrary. He made no claims for pasture. His evidence and that of many witnesses supporting him, however, was upon the daily basis and their estimates ranged from 25 cents to 40 cents a day. The witnesses in opposition placed the reasonable cost of feeding the stock at much less. A consideration of the evidence and the circumstances leads us to the conclusion that

.16 2/3 cents per day per head would be about right. This is an aggregate of $1,120, instead of $560.

We have gone minutely into the record and the consideration of the several other claims of D. F. Jones which were disallowed in whole or in part, and have reached the conclusion that the decisions below were fair and proper.

Interest is not generally allowed upon partnership accounts until after a balance has been struck on a settlement. 47 C. J. 777. Claim for interest on these several demands from the dates they began, payable by the firm, should be disallowed. They should bear interest only from the date of the original judgment.

Appellant Oliver W. Jones maintains that he was let out of the partnership as of September 10, 1926, on account of the breach of faith by his two partners, and that he is entitled to a settlement of his interests in the partnership as of that date. Most of his claims rest upon that hypothesis. Without his knowledge F. A. Jones and D. F. Jones, about that date, began to handle some live stock independently of the partnership. Some of this stock was kept elsewhere than on the island. In other instances there was a commingling of the company's stock. Dr. Jones would justify the exclusion of Oliver on the ground that he would put up no more money for the firm. Appellant contends that such transactions as proved profitable were regarded by these two partners as their independent ventures, and such as sustained loss were regarded as those of Jones Brothers. The evidence to sustain this charge is hearsay and negligible. The relationship of partners demands the utmost good faith among themselves. One acting within the scope of the partnership business cannot acquire interests for himself adverse to the firm and he is accountable to the firm for all benefits thus acquired. White v. Jouett, 147 Ky. 197, 144 S. W. 55; Chambers v. Johnston, 180 Ky. 73, 201 S. W. 488; 47 C. J. 793, 801, 1109. That there was bad faith on the part of these two men towards their brother in this respect cannot be denied. But nobody could possibly untangle the dealings or accounts as disclosed in this record and ascertain whether there was any profit which should inure to the benefit of the partnership. While a partner, in the absence of some contrary agreement, may withdraw at any time upon notice and thereby dissolve the part-

nership (Johnson v. Jackson, 130 Ky. 751, 114 S. W. 260, 17 Ann. Cas. 699; Bowman & Cockrel v. Blanton & Co., 141 Ky. 407, 132 S. W. 1041), it cannot be said that he may go back and retroactively terminate the partnership at a long anterior time. Perhaps where a fraud has been perpetrated or a partner has been guilty of gross misconduct the court should adjudicate a settlement as of the date the wrong was committed. See Young v. McKenney, 197 Ky. 768, 247 S. W. 964; 47 C. J. 113. But that is not sufficiently manifested here to authorize the court to terminate the partnership in so far as O. W. Jones is concerned as of the date he claims.

O. W. Jones submits certain claims disallowed him which he says should be allowed if the court concludes that he was not let out of the company at the time indicated. Except two or three trivial claims, in which we find no merit, they consist of the loss suffered on account of the sale of certain timber by F. A. Jones without authority of the partnership and for less than its real value, and of a claim for the partial destruction of a corn crop and the loss of certain personal property due to F. A. Jones having wrongfully displaced Washburn as a tenant. These items are among those disallowed D. F. Jones against F. A. Jones. We must also affirm the decision below on the claims of O. W. Jones growing out of the same transactions. The judgment confirmed the commissioner's report that O. W. Jones owed F. A. Jones $1,076.45 on account of partnership accounts and increased the sum reported as owing by him to D. F. Jones from $677.34 to $907.34, being the same difference of $230 made between the status of F. A. and D. F. Jones. The increases in the allowance to D. F. Jones which we have found should be made will, of course, affect the status of O. W. Jones in the partnership accounts.

Dan Washburn was the tenant living on the island. He claimed that his contract was that he should have one-half of the corn crop and that he had purchased a half interest in certain tools and live stock. His claim was sustained, although opposed by Dr. Jones. But he came out in debt to the firm because of the losses sustained in the end. In September, 1928, with the permission of D. F. Jones he went to Detroit to find work, with the understanding that he would return at corn-gathering time. There were then perhaps 90 head of hogs on the island. It appears that before going away

he arranged for his family to move to a nearby village and for his son and nephew to look after the stock and the lighthouse. He came back in a week and found Ted Murray living on and in charge of things on the island. Washburn and the other appellants claim that Murray had been put there by Dr. Jones, who had no authority to do so, since the partnership affairs were in the hands of the arbitrator and of D. F. Jones as his local representative. They claim that Dr. Jones had directed Murray to turn the hogs in the corn with the result that 35 of them were lost by swimming the chute or otherwise, and that some 2,200 bushels of growing corn were destroyed. The evidence tends to support these claims, but there is much evidence to the effect that Washburn abandoned the place and that he had turned the hogs in the fields for their sustenance; and also that the crop was very poor, if not a practical failure, because of the bad seasons. Inasmuch as this tenant suffered the practical loss of his labors for the year on this account, we have gone into his claims most carefully. Our mind is left in doubt, and we feel that we must follow the ruling of the chancellor in disallowing his claim for damages on this account. The evidence, we think, sustains the finding of the trial court on the other items submitted by him.

On the day after the suit for a receiver and a settlement of the partnership was filed, D. F. Jones made a deed to C. W. Cothron for his one-third interest in the island farm and his home place. The recited consideration is $100 cash and $9,900 payable in ten annual installments. The conveyance was attacked as fraudulent. The judgment set the deed aside to the extent that it conveyed the interest in the island property. The evidence is very meager. Jones was still living on his farm when he testified in June, 1929, and it does not appear that Cothron had undertaken to exercise any right of possession to the island property. The tax lists of the two men for the year 1929 show that the land was assessed by Jones. This is not of much significance for the assessments were made as of July 1, 1928. Yet it is a common practice when a sale has been made between the date of the assessment and the making out of the lists to return the property in the name of the buyer. Jones justifies his action and good faith by saying that the arbitrator had made his report which was a practical settlement of the partnership affairs, and that he

was amply able financially to satisfy what was shown to be due by him to Dr. Jones. The only evidence relating to Cothron is that he was a village blacksmith and conducted a small store. He did not testify. A transfer of property in anticipation of a suit or while it is pending is a badge of fraud, as is also the continued possession by the grantor after transfer. When a conveyance is attended with badges of fraud, the burden of proving good faith shifts to the one defending its integrity; and when that status has been reached, the grantee's failure to produce available explanatory evidence becomes in itself an additional badge of fraud. Allen v. Ligon, 175 Ky. 767, 194 S. W. 1050; Griggs v. Crane's Trustee, 179 Ky. 48, 200 S. W. 317; Campbell v. First National Bank of Barbourville, 234 Ky. 697, 27 S. W. (2d) 975; Wyan v. Raisin Monumental Co., 243 Ky. 431, 48 S. W. (2d) 1050; Combs v. Roberts, 237 Ky. 299, 35 S. W. (2d) 293. We concur in the action of the court.

The allowance to the special commissioner of a fee of $750 cannot be sustained, since there was no affidavit or proof such as is required by the statute (Ky. Stats., sec. 396). Livingston County v. Dunn, 244 Ky. 460, 472, 51 S. W. (2d) 450.

The court allowed a fee of $1,000 to the plaintiff, Dr. F. A. Jones, for his attorneys on the ground that he had filed the suit for settlement. Dr. Jones and his lawyers have filed in this court an offer to remit this part of the judgment. The motion to do so is sustained.

Charles M. Jones made a claim for compensation for his services in the arbitration. The special commissioner reported that he was entitled to it but made no recommendation as to the amount. The judgment makes no mention of any allowance, which in effect denied the claim. Mr. Jones has filed a motion and a disclaimer in this court wherein he relinquishes any claim that he may have in this suit against the partnership. That motion is likewise sustained.

The judgment is reversed, and the case remanded, with directions to enter a judgment in conformity with this opinion.

Thomas, J., not sitting.