## Bowman & Cockrel v. Ed. Blanton & Co.

### (Decided January 4, 1911.)

### Appeal from Madison Circuit Court.

1. Partnerships—Test—Profit Sharing—Profits and Losses.— Whatever may be the difference of opinion as to profit sharing being a test of partnership, and however many exceptions there may be to the rule that profit sharing is a test, the law is well settled that the sharing of both profits and loss always creates a partnership.

2. Continuance of Partnership—Absence of Fixed Time—Partnership at Will.—Whenever no definite time is fixed for the continuance of a partnership it is a partnership at will, and any partner may in the absence of fraud dissolve it at his pleasure by merely notifying his partners that the partnership between him and them is at an end.

3. Liability of Partners After Dissolution.—The law is well settled that the act of either partner notwithstanding the dissolution of the partnership will continue to be obligatory upon the others until due notice of dissolution is given.

J. A. SULLIVAN and S. M. WALLACE, for appellant.

J. J. GREENLEAF for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming

Appellants, H. W. Bowman and E. L. Cockrel, as partners doing business under the firm name of Bowman & Cockrel, brought this action against the appellee, Ed Blanton & Company, a corporation, to recover the value of certain lumber which they charged in their petition had been stolen by one Spahn and sold to appellee for the sum of $234.67. It was further alleged in the petition that appellee had converted the property to its own use and had failed, upon demand, to pay appellants the value thereof, amounting to $269.13. Judgment was prayed for this amount, together with interest and costs. Appellee filed an answer traversing the allegations of the petition. Upon the conclusion of appellant's evidence

the court gave the jury a peremptory instruction to find for appellee. To review the propriety of this ruling, this appeal is prosecuted.

H. W. Bowman, one of the appellants, testified, in substance, as follows: He and E. L. Cockrel were part-, ners engaged in a general lumber business at Livingston, Kentucky. They were so engaged at the time of the transaction complained of in the petition. For several years prior to the fall of 1908, W. F. Spahn had been working for them as their agent in buying and selling lumber. Spahn's relation with them as such agent ceased entirely in the late fall of 1908. While Spahn was working for them he purchased the lumber in controversy from John Moberly with funds furnished by appellants. Spahn had the lumber hauled and put in the yard near the railroad tracks at Lily, Kentucky. In the summer of 1909, after Spahn's relations with them had entirely ceased, as claimed by the witness, he agreed to sell the lumber to a party at Lancaster, Kentucky. When he went to Lily he ascertained that Spahn had a short time before sold the lumber to appellee, Ed Blanton & Company. He then called upon Ed Blanton & Company, and Mr. Ed Blanton of that firm admitted that he had bought the Moberly lumber and had given Spahn a check for it, payable to Bowman & Spahn. Spahn did not turn over any part of this sum to appellants. Appellants had not authorized Spahn to make the sale to appellee, and the sale was made without the authority and without the knowledge of appellants. On cross-examination, in answer to a question calling for the terms of the contract between appellants and Spahn, witness stated that Spahn had no money of his own; that Spahn and witness entered into a contract, by the terms of which appellants were to furnish all of the money and Spahn was to perform all the labor in buying and selling lumber on the commission basis. In each case, when lumber was sold appellants were first to have returned to them such money as they had advanced for the purchase, and the remaining profits, if any, from such sale were then to be divided, one-half to appellants and one-half to Spahn. Except his share of the profits, Spahn was to receive no compensation from appellants for his services. Acting under this agreement, Spahn bought and sold and traded in lumber with various parties for a period of several years. Under the agreement appellants were to keep records of the various transactions and to have settlements with Spahn from time to time. In

pursuance of this agreement Spahn bought from John Moberly the same lumber which he sold to appellee. In selling lumber to various parties Spahn sometimes used letter-heads and bill-heads in the name of Bowman & Spahn. He took checks in payment of lumber payable to Bowman & Spahn. In several instances he had endorsed and turned over to appellants such checks. Spahn had frequently demanded of appellants a settlement of their accounts. When these demands were made there was pending certain litigation growing out of the John Moberly lumber. On this account, the witness claimed, appellants declined to make a settlement. He did not know whether there would be any balance due Spahn or not, but he believed there would not be. In all the cases appellants were to have back the money they advanced to purchase. In every case where there was a loss Spahn had to stand the same and be charged with it. Witness knew that Spahn was using the letter-head of Bowman & Spahn and was taking checks payable to Bowman & Spahn, but did not attempt to stop the practice and did not express any objection to the practice, as he did not think it made any difference. No notice of dissolution of the business relations between appellants and Spahn was ever published, and neither appellee nor any of the parties with whom Spahn had been accustomed to dealing were notified by witness of the termination of appellants' relation with Spahn.

The other testimony for appellants relates to the shipment and sale of the lumber in question by Spahn to appellee.

It may be admitted that profit-sharing is not always a conclusive test of partnership. Thus a party may employ another to work for him and give him as compensation a certain portion of the profits, with no liability on the part of the person employed to pay his part of the losses. Or where a person rents to another an establishment and agrees to take for his rent certain portions of the profits: he will not be considered a partner. (Fuqua & Smith v. Massie & Sons, 95 Ky., 387.) Or if a party loan money to another and agrees to take certain parts of the profits of the business venture in which the borrower is engaged as interest on the money loaned, the party making the loan will not be considered a partner. Whatever may be the difference of opinion as to profit-sharing being a test of partnership, and however many exceptions there may be to the rule that pro-

fit-sharing is a test, the law is well settled that the sharing of both profits and losses always creates a partnership. Lindley on Partnership, p. 10, sums up the doctrine as follows: "But an agreement to share profits and losses may be said to be the type of a partnership contract. Whatever difference of opinion there may be as to other matters, persons engaged in any trade, business or adventure, upon the terms of sharing the profits and losses arising therefrom, are necessarily to some extent partners in that trade, business or adventure; nor is the writer aware of any case in which persons who have agreed to share profits and losses have been held not to be partners."

Appellant Bowman admitted, on cross-examination, that appellants were to furnish the money and Spahn was to perform all the labor incident to the buying and selling of lumber. In case there were profits, these were to be equally divided; in case of losses, Spahn was to bear his share. This being true, it is immaterial that Bowman called Spahn an agent. His opinion of their relations will not control in the face of his admission that appellants and Spahn were to share the profits and losses of the business, which is conclusive of the fact that they were partners.

But, it being determined that a partnership did exist between appellants and Spahn, what effect did the severance of their partnership relations in the fall of 1908 have upon the transaction in question? How the alleged dissolution of the partnership was brought about does not appear; but it may be conceded that, where no definite time is fixed for the continuance of the partnership, it is a partnership at will, and any partner may, in the absence of fraud, dissolve it at his pleasure by merely notifying his partners that the partnership between him and them is at an end. (Am. & Eng. Encyc. of Law, volume 22, page 204.) Even if we admit, then, that Bowman did dissolve the partnership relations existing between appellants and Spahn by giving such notice to Spahn, the law is well settled that the act of either partner, notwithstanding the dissolution of the partnership, will continue to be obligatory upon the others until due notice of dissolution is given. (Price & Co. v. Towsev, 3 Litt., 423.) All persons who have had dealings with the firm before the dissolution are entitled to actual notice. (Am. & Eng. Encyc. of Law, volume 22, page 170; Mitchum, et al. v. Bank of Kentucky, 9 Dana

166.)   As to other persons, it is only necessary that they should be afforded a reasonable opportunity of knowing the fact.   Notice by publication in a newspaper, published in the locality where the business of the partnership had been conducted, is the usual and best method of giving such notice.   (Shurlds v. Tilson, 2 McLean, U. S. 458; Martin v. Searles, 28 Conn. 46; Meyer v. Krohn, 114 Ill., 574.)   But the reasonableness of the notice in any given case, and the extent to which it should furnish the opportunity of knowing the fact, must depend upon the nature of the occupation in which the firm was engaged and the extent of dealing belonging generally to that occupation.   (Mitchum, et al. v. Bank of Kentucky, supra.)   Where a long time has elapsed since the dissolution, and in the transaction with the former partner matters are brought to the third party's attention which would indicate that the affairs of the partnership are in a state of liquidation and final settlement, these are circumstances from which knowledge of the dissolution may be inferred by the jury.   (Merritt v. Pollys, et al., 16 B. Mon., 354.)

In the present case it is admitted that there was neither actual notice nor notice by publication.   Nor were any facts adduced in evidence from which a jury might infer that appellee had knowledge of the dissolution of the firm.   That being true, the act of Spahn in selling the lumber was binding on the firm, just as much so, in fact, as would have been the sale by Bowman to the party at Lancaster if the latter had bought the lumber without due notice of the dissolution of the partnership. As the act of Spahn, in making the sale, was binding on the partnership, the payment to him discharged the debt although he failed to account to the firm for the money.   (Collins v. Collins, 26 Ky. Law Rep., 1037.)

From the foregoing, it follows that the court properly instructed the jury to find for appellee.

Judgment affirmed.