## Clarke v. Rogers, et al.

(Decided September 25, 1914.)

### Appeal from Mason Circuit Court.

1. Contracts—Interpretation—Conduct of Parties.—Where a contract is susceptible of two interpretations, some weight will be given to that interpretation placed upon it by the parties themselves through a series of years, yet that rule does not apply where the terms of the contract are plain and unambiguous, and the conduct of the parties in their essential relations with each other is entirely consistent with those terms.

2. Partnership—Contract of Employment—Construction.—Where plaintiff was employed by defendant as her bookkeeper and general manager, and his salary fixed at one-fourth of the net profits on all goods that were sold, and the contract further. provides

that he is to act under her supervision and control as she may order and direct, and at the end of each year the salary owing him, less the sum drawn out by him to pay his necessary expenses, is to be passed to his credit on the books, and that neither he nor defendant is to be allowed interest upon the sums used by them in the business, and it is further stipulated in the contract that plaintiff is to have no part of any profits on unsold goods, but only to receive one-fourth the net profits on goods actually sold, the contract is one of employment merely, and not of partnership.

3. Contracts—Termination—Effect.—Where such a contract is of uncertain duration, and defendant dies, her representatives may terminate the contract, and this fact, in view of the agreement that plaintiff is to have no part of any profits on unsold goods, does not enlarge his rights or give to him any interest in the profits upon goods not theretofore sold.

WORTHINGTON, COCHRAN & BROWNING for appellant.

THOMAS D. SLATTERY and O'REAR & WILLIAMS for appellees.

OPINION OF THE COURT ⸱⸱ WILLIAM ROGERS CLAY COMMISSIONER—Affirming.

In this action by plaintiff, Frank H. Clarke against the heirs and administrator of Lida C. Rogers, deceased, for an accounting and settlement of a partnership alleged to have existed between the plaintiff and Lida C. Rogers, the trial court sustained a demurrer to and dismissed plaintiff's petition. Plaintiff appeals.

For several years prior to August 1, 1892, Mrs. Lida C. Rogers was the owner of a distillery plant located near Maysville, Kentucky, and a free and bonded warehouse connected therewith, in which to store the product of the distillery. On August 1, 1902, plaintiff and Lida C. Rogers entered into the following contract:

"Frank H. Clarke was in the employ of Lida C. Rogers as bookkeeper and general manager of her business during the past year for a salary of one-fourth of the net profits realized by her on her sales during the year. The net profits and the one-fourth part thereof belonging to said Clarke have been ascertained and determined by Geo. M. Hord, Esq., to which both the contracting parties hereto are agreed. The sum awarded Clarke by Hord, less the amount drawn by him during the year, is to be passed to the credit of Clarke on the books of Mrs. Rogers, and it is now agreed by and between Clarke and Mrs. Rogers that Clarke is to remain in the employ of Mrs. Rogers as her bookkeeper and general manager

for at least one year longer and longer than one year, unless this agreement is changed by mutual consent, at the same salary—that is to say, for one-fourth part of the net profits on sales of her business. But he is to act under her supervision and control as she may order and direct in the management of her business. At the end of each year the salary owing Clarke is to be passed to his credit on the books of Mrs. Rogers, less the sum drawn by him during the year to pay his necessary expenses. Neither Mrs. Rogers nor said Clarke is to be allowed interest upon the sums used by them respectively in the business.

"In ascertaining the first cost of the distillery product, six hundred dollars per year is to be added for the repairs and taxes on the distillery; interest and taxes on the manufactured goods for that year, interest on all money borrowed and used in manufacturing same, salary and wages of employes, cost of material used, and all other expenses necessarily incurred in the manufacture of spirituous liquors; but nothing is to be added for storage until the whiskey is sold to remain in bond. When the whiskey is sold and remains in the bonded warehouse the storage upon it is to belong to Mrs. Rogers, and Clarke is to have his one-fourth part of the net profit made on the sales. In making sale of goods, all the expense of selling and handling same, and all bad debts, and the expense of renting and running the business warehouse on Market street in Maysville, are to be deducted from the price for which the whiskey sells. In estimating the salary owing Clarke at the end of each year, or when he quits the employment of Mrs. Rogers, all unsold goods are to be invoiced at the actual cost of manufacturing and carrying same to date of invoice, as it is understood and agreed by and between the parties hereto, that Clarke is to have no part of any profits upon unsold goods, but only receive one-fourth of the net profits on goods actually sold.

"Clarke agrees to give his entire time and attention to the business of Mrs. Rogers; to keep her books correctly, and not to intermingle her private business with her wholesale liquor and distillery business; to manage the business according to the wishes of Mrs. Rogers; to allow his salary, less his necessary living expenses, to remain in the business of Mrs. Rogers until she consents to its withdrawal or he leaves her employ; and generally to serve her faithfully and to the best of his ability, and to use his best efforts to make her business profitable.

"In case of disagreement between the parties, such difference is to be settled by arbitrators, one to be chosen by each party, and both agree to submit to the arbitration whether it is right or wrong.

"In testimony whereof, said Lida C. Rogers and Frank H. Clarke hereunto set their hands this August 1st, 1892.

Signed,

"LIDA C. ROGERS,<br>FRANK H. CLARKE."

It appears from the petition that prior to August 1, 1892, plaintiff, who was Lida C. Rogers' brother, had been managing and controlling for her the distillery and the business of manufacturing, storing and selling the products thereof, under an agreement between them by which he was to have one-fourth the net proceeds of the business, and she three-fourths. From and after the execution of the contract of August 1, 1892, the business was carried on until April 24, 1911, when Lida C. Rogers died. The business was under the active management and control of plaintiff, the decedent exercising only general supervision over it. The license which they took out from year to year was issued to them as partners under the firm name, and all the sales of whiskey and collections therefor were made in the firm name. At the commencement of the business under the contract, all the manufactured goods belonging to the decedent then on hand, and all the machinery and other personal property used in connection therewith, were invoiced and valued by her and plaintiff at the sum of $53,341.29. This sum was credited to decedent on the books of the firm, and the firm charged therewith. The net profits of the whiskey thereafter sold were, when collected, credited as profits on the books of the firm. There was no settlement and apportionment of the profits until the year 1910, although both plaintiff and decedent drew from time to time certain moneys from the business and were charged therewith on the books. On July 31, 1910, said profits were allotted to plaintiff and decedent, and each credited on the books with his or her share; that is, he with one-fourth and she with three-fourths. After Mrs. Rogers' death the business, under the agreement between the plaintiff and her administrator and heirs at law, was conducted under the same terms, until July 7, 1911, on which date the heirs and administrators of Mrs. Rogers terminated the contract. On October 16, 1911, there was

an adjustment and settlement between the plaintiff and defendants of the profits coming to him under the contract from goods thereafter sold. This amount found to be due on the sales thereafter made was paid to plaintiff. When this settlement was made it was expressly agreed that it embraced only the proceeds on goods sold and converted into cash, and was without prejudice to any claim that either of the parties had against the other.

On July 7, 1909, there was in the hands of the defendants as assets of said firm business, including the accounts for goods that had been thereafter sold, amounting in the aggregate to about $20,000. There were also on hand in the free and bonded warehouses certain manufactured goods, the total cost of which, including storage, was $108,315.50, and the actual money value thereof at the time of bringing the suit was $199,128.00, thus making the profit thereon, estimated at the present market value of the goods as compared with the cost thereof, $90,208.50, to which, it is alleged, the plaintiff is entitled to one-fourth and defendants three-fourths. Besides the above assets the firm had on hand numerous bottles and cases and other personal property of the value of $2,967.97. All of said goods, including the cost of manufacturing the same, had been paid for prior to the dissolution of the contract out of the proceeds from the business while it was being carried on under the contract. Since the dissolution, some of the goods had been sold and disposed of by the defendants and payment made to plaintiff of his part thereof. At the time of the bringing of the suit nearly all the goods were on hand and unsold. The petition concludes with a prayer for a settlement of the partnership. It asks that all the assets of the firm be sold and converted into cash under the supervision and orders of the court, and that the net profits arising therefrom be divided between plaintiff and defendants in proportion to the terms of the written contract; that is, one-fourth to plaintiff and three-fourths to defendants.

It is insisted that the trial court erred in sustaining the demurrer to the petition. Briefly stated, the contentions of plaintiff's counsel are as follows:

(1)  The written agreement of August 1, 1892, evidences a partnership when considered in the light of the actions of the parties for the nineteen years succeeding its execution.

(2) If not a contract of partnership, but one of employment merely, yet inasmuch as plaintiff's compensation depends on the amount of profit in the business, he is entitled to sue for an accounting.

(3) The contract does not limit plaintiff's right to one-fourth of the profits on goods actually sold, and the profits thereon distributed prior to the termination of the contract relation, but limits plaintiff's right to profits on unsold goods only in case he voluntarily quits the employment, which the undisputed facts show that he did not do.

In support of these positions it is argued that there is nothing in the name given an instrument which will be in any way binding or controlling upon the court. Bowman v. Blanton, 141 Ky., 407; Harvey v. Rhode Island Locomotive Works, 93 U. S., 664; Stocton Savings Society v. Purvis, 3 Am. St. Rep., 212. On the contrary, it is the substance and not the name of the relation which determines the legal relation of the parties. It is therefore argued that in view of the fact that the assets on hand when the contract was executed were credited to Mrs. Rogers and charged to J. H. Rogers & Company, that the license was taken out in the joint names of the plaintiff and Mrs. Rogers, that the goods were purchased with the profits which the parties had left in the business, and that if the goods were destroyed each of the parties would have borne a part of the loss, a partnership necessarily existed between the parties. It is further insisted that not only was it not intended by the parties, but it would be inequitable to hold, that where Mrs. Rogers or her representatives terminated the contract, plaintiff could be deprived of his share in the profits on unsold goods.

This is a case where the parties freely and voluntarily entered into a written contract. It is not insisted that the contract was obtained by fraud, or, as the result of mutual mistake, does not represent the true intention of the parties. Nor is it claimed that the written contract was abrogated by any subsequent contract. On the contrary, plaintiff's case is predicated on the written contract. Therefore, the question presented is one of interpretation only. While it may be true that where a contract is susceptible of two interpretations, some weight will be given to that interpretation placed upon it by the parties themselves through a series of years, yet that rule does not apply where the terms of the con-

tract are plain and unambiguous, and the conduct of the parties in their essential relations with each other is entirely consistent with those terms. We do not, therefore, regard as controlling the fact that the business was conducted in the firm name of J. H. Rogers & Company, or that the license was taken out in the name of plaintiff and Mrs. Rogers. These things may have been done as a matter of convenience or precaution, and cannot be regarded as abrogating the rights of the parties under the contract. Nor is this a case where the parties have called the contract relation by a certain name, and then by the terms thereof provided for a different relation. It appears from the written contract that plaintiff had been in the employ of Mrs. Rogers as bookkeeper and general manager. The written contract provides that he shall continue to act in the same capacity by the use of the words "that Clarke is to remain in the employ of Mrs. Rogers as her bookkeeper and general manager." The contract further provides that he shall remain at the same salary; that is to say, for one-fourth part of the net profits on sales of her business. For the purpose of determining his one-fourth part of the net profits made on sales, the contract stipulates that all the expenses of selling and handling the same, and all bad debts and expenses of renting and running the business warehouse on Market Street in Maysville, shall be deducted from the price at which the whiskey sells. There is a further provision to the effect that at the end of each year "the salary owing Clarke is to be passed to his credit on the books of Mrs. Rogers, less the sum drawn by him during the year to pay his necessary expenses." Neither Mrs. Rogers nor Clarke was to be allowed interest on the sums used by them in the business. Then, to leave no doubt as to the basis on which the profits were to be estimated, it was agreed and understood "that Clarke is to have no part of any profits upon unsold goods, but only to receive one-fourth of the net profits on goods actually sold." Here, then, we have a case where not only the name given to the contract relation, but all the terms of the contract, are absolutely inconsistent with the theory that a partnership was intended by the parties. Plaintiff is employed as a bookkeeper and general manager. His salary is fixed at a certain proportion of the profits. There is no division of the profits as profits. His compensation as bookkeeper and general manager is simply fixed at a certain pro-

portion of the profits on goods actually sold. Not only is there no participation in the profits as profits, but there is no mutual agency. While plaintiff is the agent of Mrs. Rogers, he was to act under her supervision and control, and as she might order and direct in the management of the business. The mere fact that the contract stipulated that his proportion of the net profits, after deducting the necessary living expenses, was to remain in the business, in no way changes the relation between them; for he was only to withdraw such sums as were so left without interest. The fact that these sums were so left did not make him liable for any losses. Even if the goods had been destroyed, the loss would not have fallen on him, but on Mrs. Rogers. He would have been entitled to a return of his money at all events. Manifestly, the purpose of Mrs. Rogers was not only to provide for the manufacture of whiskey, but to stimulate plaintiff to make sales thereof by giving him one-fourth of the net profit thereon, and by further providing that he was to have no part of the net proceeds on goods not actually sold. The contract does not base his compensation on whether or not he voluntarily quits Mrs. Rogers' employment, or the contract is otherwise terminated. The duration of the contract is uncertain. The parties operated under it for nineteen years. Being of uncertain duration, we think the representatives of Mrs. Rogers had the right to terminate it upon her death. Its termination in this manner in no way enlarged the rights of plaintiff, who had solemnly agreed that he was to have no part of any profits on unsold goods, but should receive only one-fourth the net profits on goods actually sold. As plaintiff is seeking in this suit to recover one-fourth of the net profits on goods unsold at the time of Mrs. Rogers' death, it follows that the trial court properly sustained a demurrer to his petition.

Judgment affirmed.