## Gordon v. Gordon.

June 19, 1942.

W. A. Armstrong for appellant.

C. G. Barrickman and T. B. Roberts for appellee.

Opinion of the Court by Sims, Commissioner—Reversing.

In 1935 Curtis Gordon and H. H. Gordon (referred to in the record as Holly) together with their sister, Mrs. Harrison, acquired title at a judicial sale to a farm of 210 acres located in Spencer County. The two brothers each own an undivided three-eighths interest in the farm with the remaining two-eighths being in Mrs. Harrison. As this litigation relates to the division of a tobacco crop between the brothers in which their sister is not concerned, her interest in the farm will be disregarded in this opinion and we will treat the question just as if Curtis and Holly were joint and equal owners of the entire farm.

Adjoining this 210-acre farm and bounded on three sides by it is a tract of 25 acres which Curtis has owned individually since 1929. As we gather from the record, there are no improvements in the way of buildings on this small tract, but there is a dwelling and barns on the 210 acres on which the brothers resided until this controversy arose. There had been no tobacco grown on the 25-acre tract since the United States Department of Agriculture assumed control over the production of that crop, therefore under that Department's rules no tobacco allotment could be made on that land. An allotment, or base, for the growing of seven acres of tobacco was made by the proper authorities on the 210-acre farm.

After consulting with the County Agriculture Conservation Association, the brothers were allowed to combine the two tracts into a farm of 235 acres in 1936 for the purpose of obtaining their allotment of crops. Through this arrangement tobacco could be grown on any part of the 235 acres, although the base which had been allotted to the 210 acre tract could not be exceeded. Subsequently there was a general deduction in tobacco acreage throughout Kentucky, resulting in the base on the 210 acre farm for 1940 being reduced to 4.8 acres. The combination of these two tracts did not affect the title thereto and Curtis continued in the ownership of the 25 acres, and he and Holly retained their respective undivided interest in the 210 acres.

From 1936 to 1939, inclusive, Curtis and Holly operated the 235 acres as equal partners and produced a tobacco crop thereon during each of these years. A mar-

keting card was issued to them jointly by the United States Department of Agriculture, their tobacco crops were sold in their joint names and the proceeds divided equally between them. All four of these crops had been grown on the 210-acre tract. In 1940 they planted their tobacco crop on the 25 acres owned individually by Curtis. There is a conflict in the evidence as to why this was done. Holly's testimony is that he suggested the change because the 25 acres had not produced a crop for 15 or 20 years and was rested land; while Curtis testified Holly made no such suggestion and says he planted the crop on his own land so it all would be his, as he was tired of doing all the work and giving Holly half of the crop.

It is not disputed that these two men were partners in their farming operations during the four years from 1936 to 1939. It is admitted that Curtis said nothing to Holly concerning the termination of the partnership, or even intimated to him by word or act, before or at the time the crop was planted or while it was growing or being prepared for market, that he claimed the entire crop. On the other hand, it is not denied that Curtis told Obie Husband while working in this 1940 crop that it was the last tobacco he was going to grow with Holly. The first notice given by Curtis that he was claiming the entire crop was when it was sold at a warehouse auction on Jan. 16, 1940, when he informed Holly and the warehouse that he was entitled to all the proceeds from the sale despite the fact the tobacco was sold in the joint names of Curtis and Holly.

The warehouse refused to deliver the proceeds to Curtis, whereupon he brought this action against it and Holly, alleging the tobacco was grown on his land and that he was entitled to the $884.31 for which it sold. The warehouse paid the proceeds into court. Holly filed answer in which he averred the crop was grown and marketed under the partnership agreement and that one-half of the proceeds was due him. Upon a jury trial the verdict was in favor of the plaintiff, Curtis, and Holly filed motion here for an appeal, insisting that the verdict is flagrantly against the evidence.

The only issue was whether the entire sale price of the crop went to Curtis or whether one-half thereof went to Holly. The trial judge in effect instructed the jury they should find for the plaintiff unless they believe

from the evidence that under the partnership arrangement it was agreed between the brothers that the 1940 crop was to be raised as partnership tobacco, in which event they should find for the defendant, Holly. This instruction correctly embodied the law. But was there any evidence upon which to base it?

It appears that the partnership business was transacted rather loosely and neither brother kept accurate account of what he expended. A reading of the record fails to show any evidence tending to establish that this crop was not produced under the partnership agreement the same as the four previous ones. It is true the evidence is convincing that but little of the work in producing the crop was done by Holly, and that Curtis did practically all the work or hired the hands to perform it. But the record is silent as to whether or not Holly was performing other work for the partnership at the time or hiring hands or making expenditures in other crops. Also, there is evidence that Curtis and the hands he hired in the tobacco all ate at Holly's table and that tools and teams belonging to the partnership worked this crop. It is immaterial whether or not Curtis did most of the work because the general rule, in absence of an express agreement, is that a partner is not entitled to compensation for services rendered the partnership by reason of any inequality of services rendered by him as compared with those rendered by its other members; he must depend on his share of the profits for such remuneration. 47 C. J. Sec. 230, p. 786; 40 Am. Jur. Sec. 123, p. 214; Bemiss v. Widows' & Orphans' Home of Christian Church of Kentucky, 191 Ky. 316, 230 S. W. 310; Burgan v. White, 223 Ky. 79, 2 S. W. (2d) 1067.

The great weakness in Curtis' position is that four previous crops had been grown by the partnership and neither before nor at the time the fifth crop was being produced had he ever informed Holly that it was not a partnership crop. This partnership was for no definite time nor to accomplish any particular purpose but was such as could be terminated by either of the partners at will. Although a partnership existing at will can be dissolved on a moment's notice, provided the withdrawing partner acts in good faith and at a reasonable time, 40 Am. Jur. Sec. 236, p. 292; Bowman & Cockrel v. Ed. Blanton & Co., 141 Ky. 407, 132 S. W. 1041; Johnson v. Jackson, 130 Ky. 751, 114 S. W. 260, 17 Ann. Cas. 699;

Pawley v. Glasscock, 236 Ky. 821, 34 S. W. (2d) 729, yet neither law nor equity will allow Curtis to remain silent during the year this tobacco was being grown on his land and then when it was put on the market to claim that it was not the property of the partnership but belonged to him individually. Corn grown on part of this 25 acres in 1940 was fed to the partnership's stock, and in previous years this land had been used for grazing purposes by the partnership. This is persuasive evidence that this small tract was used for partnership purposes in the year 1940 just as it had been used by it in the previous years, although in a different manner.

The verdict for the plaintiff was not only flagrantly against the evidence, which under the rule of Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, would entitle defendant to a directed verdict on another trial should the evidence be substantially the same, but we hold that there was no evidence upon which the trial judge could have submitted to the jury the question whether or not the 1940 tobacco crop was produced under the partnership agreement. All the testimony shows this crop was grown under the partnership agreement and the court should have directed the jury to find a verdict in favor of the defendant, Holly.

The motion for an appeal is sustained, the appeal is granted, and the judgment is reversed with directions upon another trial, should the evidence be substantially the same, to direct a verdict in favor of the defendant.