RENDERED: MAY 6, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2021-CA-0496-MR


BENJAMIN ROBERTSON,
INDIVIDUALLY AND ON
BEHALF OF AND AS EXECUTOR
OF THE ESTATE OF WILLIAM
ROBERTSON                                                       APPELLANT


|            | APPEAL FROM JEFFERSON CIRCUIT COURT |
|------------|-------------------------------------|
| v.         | HONORABLE AUDRA J. ECKERLE, JUDGE   |
|            | ACTION NO. 18-CI-005963             |


WILLIAM KEVIN O'BRIEN;
HEESOOK KIM; AND MARY
PATRICIA SCHOOL,
EXECUTRIX OF THE ESTATE
OF VELMA ROBERTSON                                              APPELLEES

AND


NO. 2021-CA-0521-MR


WILLIAM KEVIN O'BRIEN                                     CROSS-APPELLANT

CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.              HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 18-CI-005963

BENJAMIN ROBERTSON,
INDIVIDUALLY AND ON
BEHALF OF AND AS EXECUTOR
OF THE ESTATE OF WILLIAM
ROBERTSON; HEESOOK KIM; AND MARY
PATRICIA SCHOOL,
EXECUTRIX OF THE ESTATE
OF VELMA ROBERTSON                                    CROSS-APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; CETRULO AND GOODWINE, JUDGES.

CLAYTON, CHIEF JUDGE:  This appeal and cross-appeal are brought from the findings of fact, conclusions of law, and order of the Jefferson Circuit Court following a bench trial.  The appellant, Benjamin Robertson ("Robertson"), individually and in his capacity as the executor of the estate of his father, William Joseph Robertson ("Decedent"), brought suit against William Kevin O'Brien ("O'Brien") and others, seeking injunctive and declaratory relief regarding the ownership of a house and real property.  Robertson disputes the trial court's finding that O'Brien is entitled to possession and ownership of the property in its

-2-

entirety. On cross appeal, O'Brien argues that the trial court erred in finding that Robertson owes him no monies. Having reviewed the record, we affirm.

The property at issue consists of a house and land located on South Second Street in Louisville, Kentucky. In 1981, O'Brien and his family moved into the house, which belonged to his mother-in-law, Mabel Thompson. Mrs. Thompson moved out of the house at that time. O'Brien wanted to buy the house, and he claims he paid Mrs. Thompson $35,000 at the time of the move and an additional $15,000 later on. He also began making the mortgage payments on the home.

In 1985, Mrs. Thompson deeded the home to O'Brien's brother, Dan, because O'Brien did not have sufficient income to assume the outstanding $70,000 loan remaining on the house. The brothers assumed the remaining $70,000 loan Mrs. Thompson had held on to the home, and they were given credit for the $50,000 O'Brien had already paid to Mrs. Thompson. The loan was increased by an additional $50,000 to perform necessary repairs on the house for a total lien of approximately $120,000. O'Brien continued to make the mortgage payments. After he and his wife divorced in 1986, he continued to live in the house.

In 1998, Decedent approached O'Brien about allowing Robertson, his son, to live in part of the house while he was a student at the nearby University of Louisville Speed School. Decedent, Robertson, and O'Brien entered into an

informal agreement. According to O'Brien, they agreed that O'Brien had $57,500 in equity in the property, reflecting his earlier payments to Mrs. Thompson and his payment of the mortgage and expenses from 1981 to 1998. Dan O'Brien deeded the property to O'Brien, Robertson, the Decedent, and the Decedent's wife, Janet. The deed reflected a purchase price of $120,000. According to O'Brien, neither he nor Robertson put any of their own funds towards acquiring the property. Any down payment would have come from Decedent, although there is no evidence in the record of such a payment. The mortgage on the property was in the name of Decedent and Janet.

The house contains three apartments. Apartment #1, located on the first floor, is the largest unit and includes access to the basement. It has been occupied rent-free by O'Brien since 1981. Apartment #2, the other first floor unit, was occupied by Robertson and/or the Decedent from 1998 to 2002. It was rented out thereafter and Decedent or his estate received $650 per month in rental income. Apartment #3, located on the second floor, has been rented to a third party for $1,700 per month and the rent is paid to O'Brien.

During the period from 1998 to 2002, Robertson and/or the Decedent paid approximately 20 percent of the joint expenses of the house, including 20 percent of the mortgage. O'Brien managed the premises and paid the other 80 percent of the expenses. Robertson and O'Brien disagree about how much they

each contributed to managing the property. Robertson claimed that he managed the house from 1998 to 2002, while he was attending the Speed School, whereas O'Brien testified that he managed the entire house himself.

In 2002, Robertson decided to give up his interest in the property, because in his view O'Brien did not have the same work ethic as he and his father. In 2002, Decedent and Janet, Robertson and his wife Bessie, and O'Brien conveyed an undivided one-half interest with survivorship, in fee simple, to Decedent and his wife, Janet, and the other undivided one-half interest to O'Brien.

In 2009, Decedent moved to Hawaii and thereafter did not pay any amount towards the mortgage, joint expenses, or utilities of the property. O'Brien thenceforth assumed all these expenses.

In 2010, Decedent and Janet divorced. As part of their settlement agreement, Janet quitclaimed her interest in the Louisville property in exchange for consideration paid to her by the Decedent in the amount of $6,457.29 and by O'Brien in the amount of $10,000.00. The quitclaim deed described Jane's share as 8.9 percent of the real property. Decedent and O'Brien signed an agreement stating that for valuable consideration received, they were the owners of the property located on Second Street. The agreement also stated that "[t]he percentage of interest in said property of each of us has not yet been determined by us, and said percentage of ownership is to be determined at a later date by us,

based upon beginning equity of O'Brien prior to [Decedent] obtaining any share of ownership in said property, and further based upon amounts paid since said time by the parties hereto, said amounts to be agreed upon by us at a later date."

Decedent later married Heesook Kim. In January 2017, he passed away and Robertson was appointed executor of his estate. Decedent's will specified that his estate should be equally shared between his son, Robertson, and his mother, Velma Robertson.

In October 2018, Robertson, individually and as his father's executor, filed a complaint against O'Brien, Heesook Kim, and the Estate of Velma Robertson, claiming an ownership interest in the Louisville property. The complaint alleged that O'Brien continued to assert authority to control the property and further alleged that the assets might be consumed, wasted, or disposed of by O'Brien, to the detriment of the other parties. It sought a court-ordered sale pursuant to Kentucky Revised Statutes ("KRS") 389A.030 if the parties could not agree to an alternate disposition and a full accounting of O'Brien's collection, use, and disposition of assets connected with the property.

A bench trial was held at which the personal representative of Velma Robertson's estate testified that Robertson alone should receive Decedent's interest in the property. Decedent's widow, Heesook Kim, also waived any interest in the property.

In its findings of fact, conclusions of law, and order, the trial court rejected Robertson's argument that O'Brien had essentially operated an equal partnership with the Decedent and/or Robertson in relation to the Louisville property. The trial court found that O'Brien's share was greater because he had a large and pre-existing equity in the property and had made much larger capital contributions to the property. As further evidence that there was no "equal partnership," the court noted that O'Brien had occupied the premises since 1981 and constantly possessed more than two-thirds of the premises, residing rent-free in Apartment #1 and collecting all the rents from Apartment #3. He performed more of the maintenance and contributed 80 to 100 percent of the expenses of the property. On this basis, the court concluded that his ownership share would have to be at least 75 percent.

Relying on the testimony and report of O'Brien's expert, Richard Williams, a certified public accountant with extensive experience in accounting as it relates to real property, the trial court found the specific ownership shares to be 12.4 percent for Decedent and 87.6 percent for O'Brien. Williams arrived at these amounts as follows: first, he acknowledged that in the 2010 agreement, Decedent and O'Brien certified that their ownership percentages in the property were undetermined and Decedent agreed that O'Brien owned some percentage of the property before Decedent became an owner in 1998.

Williams found that the ownership percentages were subsequently clarified through the divorce decree and quitclaim deed of Decedent and his former spouse, Janet. As part of their divorce, the couple documented their share of the property to be 17.8 percent or 8.9 percent each. At that time, O'Brien acquired 5.4 percent of Janet's 8.9 percent, through his payment of $10,000. Decedent acquired the remaining 3.5 percent through his payment of $6,457.29. Thus, Decedent's share of the property increased to 12.4 percent and O'Brien's share increased to 87.6 percent.

The trial court determined that the present value of the house was $185,000 with a present mortgage of $66,000, leaving an amount of $119,000 in equity. Thus, Decedent's 12.4 percent share equaled $14,756. The court found that from 2010 to the present, the Decedent or his estate should have paid 12.4 percent of the $205,621.23 joint expenses, an amount of $24,497.03, leaving Decedent and his estate with a negative interest in the house of $9,741.03. The court further observed, however, that this failed to account for the expenses Decedent or Robertson had paid over the years towards the property, which the court found would certainly exceed $9,741.03. It further noted that the contributions of Decedent, Robertson, and O'Brien over the years, if totaled, would exceed the actual equity existing in the property today. Consequently, the court awarded no additional monies to either of the parties.

The court concluded that the property could not be feasibly divided without affecting its overall value, as all the apartments shared utilities and had operated together for many years. It observed that a sale of the premises would be grossly unfair to O'Brien, who had been living there for forty years. It also noted that neither party had formally requested such a division.

The trial court held that O'Brien was entitled to possession and ownership of the property in its entirety and ordered Robertson to execute all the necessary documents to transfer the property into O'Brien's name and allow him a reasonable time thereafter to refinance the property. This appeal by Robertson and cross-appeal by O'Brien followed.

When an action is tried before a court without a jury, "the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.] Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Kentucky Rules of Civil Procedure ("CR") 52.01. Findings of fact are clearly erroneous if they are not supported by substantial evidence. *Patmon v. Hobbs*, 280 S.W.3d 589, 593 (Ky. App. 2009). Substantial evidence is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in

the minds of reasonable [people]." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (internal quotation marks and citations omitted). "[W]hile deferential to the lower court's factual findings, appellate review of legal determinations and conclusions from a bench trial is *de novo*." *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016) (citation omitted).

Robertson argues that upon determining that the property could not be feasibly divided without affecting its overall value, the trial court was required under KRS 389A.030 to order the sale of the property. The statute states in relevant part:

> When two (2) or more persons other than tenants by the entirety in residential property actually occupied by them as a principal residence share title to real estate in such manner that a conveyance by them jointly would pass a fee simple title, any one (1) or more of them may bring an action for the sale or division thereof in the Circuit Court of the county in which the land, or the greater part thereof, lies, making parties defendant those owners who have not joined as plaintiffs.

KRS 389A.030(1).

It is difficult to see the benefit accruing to Robertson if the trial court had ordered the sale of the property and the net proceeds divided because it had already decided that O'Brien was entitled to ownership of the property in its entirety.

-10-

Robertson contends that Decedent and O'Brien were essentially operating an equal partnership with the property and under Kentucky law such a partnership can be assumed unless there is a disparity of capital contribution. The unreported case upon which Robertson relies stands for the proposition that when there is an existing, established partnership, partners are assumed to hold equal interests unless the evidence shows otherwise. *Commonwealth ex rel. Bracken's Heirs v. Bracken*, 32 S.W. 609, 610 (Ky. 1895).

Robertson alleges the trial court erroneously applied family court principles when it ruled that the property would not be ordered to be sold because O'Brien had lived there and created memories for over forty years. He criticizes the trial court for giving weight to O'Brien's maintenance and hands-on work at the property, contending that Kentucky law requires the court to analyze the capital contributions each party has put into the partnership, not what "feels good" to the trier of fact.

The trial court's decision regarding the disposition of the property did not hinge on its finding that O'Brien had resided there for forty years. The trial court confronted and expressly acknowledged the difficulty of untangling an informal partnership based on the capital contributions made by the parties when there was a dearth of evidence regarding these contributions. In the absence of such evidence, the trial court concluded that it would have been inequitable to

award a 50 percent share to Robertson when there was considerable evidence that O'Brien had paid the bulk of the expenses and mortgage associated with the property for many years.

The case relied upon by Robertson, *Gordon v. Gordon*, is clearly distinguishable. 291 Ky. 244, 163 S.W.2d 454 (1942). The Gordon brothers were partners in their farming operations for four years and equally shared the proceeds. Then, one of the brothers planted a crop on an adjoining plot of land of which he was the sole owner. He never informed his brother that it was not a partnership crop. The other brother argued that he was entitled to half the profit from the crop. The partner who planted the crop argued that he was entitled to the entire profit because he put more effort into growing the crop. Although the brothers' partnership business "was transacted rather loosely" and "neither brother kept accurate account of what he expended[,]" neither denied the existence of such a partnership or that the profits were equally shared in the preceding four years. The court concluded that the record failed "to show any evidence tending to establish that this crop was not produced under the partnership agreement the same as the four previous ones." *Id.* at 455. As to the contention that the profit should go to the brother expending greater effort, the court stated that this was immaterial "because the general rule, in absence of an express agreement, is that a partner is not entitled to compensation for services rendered the partnership by reason of any

inequality of services rendered by him as compared with those rendered by its other members; he must depend on his share of the profits for such remuneration." *Id.* at 456.

By contrast, in this case, there was no partnership agreement, however informal, nor was there a history of equitable division that would govern the disposition of the Louisville property. In the absence of such an agreement or evidence of capital contributions, it would have been inequitable for the trial court to assume that the property should be divided equally. Although Robertson rejects Williams's opinion that the ownership percentages were established in the 2010 quitclaim deed connected with Decedent's divorce, these percentages constitute substantial evidence supporting the trial court's decision. Similarly, the trial court did not err in considering the non-capital contributions of the parties in the absence of an agreement and the absence of evidence regarding capital contributions.

On cross-appeal, O'Brien argues that the trial court erred in determining that Robertson does not owe him the negative interest of $9,741.03. The trial court acknowledged that Decedent and Robertson had paid expenses and performed work at the property over the years. It also noted, however, that if the court were to engage in an analysis of giving each party credit for every dollar spent on the premises over the years, the amount would exceed the actual equity currently existing in the property. It therefore decided not to award O'Brien the

negative interest, reasoning that it would constitute an unwarranted windfall and unjustly enrich him for engaging in this venture for years without an explicit agreement.

O'Brien argues that the trial court's findings are internally contradictory and incorrect. He contends that there is no evidence that Robertson or the Decedent paid any additional expenses above those already contained in the calculation of the $9,741.03 shortfall. "[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore*, 110 S.W.3d at 354. The trial court accepted the evidence of Robertson and the Decedent's contributions to the property described in Robertson's testimony. Even O'Brien admitted that there were times when Decedent and Robertson worked on the house, although he testified that he did a great deal more. The trial court did not err in ruling that awarding O'Brien the negative interest would be inequitable in light of the contributions made by Robertson and the Decedent over many years.

For the foregoing reasons, we affirm the findings of fact, conclusions of law and order of the Jefferson Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT/
CROSS-APPELLEE:

Justin R. Key
Prospect, Kentucky

BRIEF FOR APPELLEE/
CROSS-APPELLANT WILLIAM
KEVIN O'BRIEN:

W. Kenneth Nevitt
Louisville, Kentucky